**Hamid SHOAEE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 81–7197, 83–7017.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1983.

Decided April 26, 1983.

Arthur W. Simon, San Francisco, Cal., for petitioner.

Joseph F. Ciolino, Washington, D.C., for respondent.

Before MERRILL, CHOY, and SNEED, Circuit Judges.

SNEED, Circuit Judge:

This is a petition for review of a final order of deportation issued by the Board of Immigration Appeals. The Board upheld the denial of petitioner's application for an extension of his stay in the United States and of his request for asylum in this country. The Board also rejected various constitutional arguments concerning the treatment of Iranian students by the Immigration and Naturalization Service. We affirm.

## I.

## FACTS

Hamid Shoaee is an Iranian citizen. He received a nonimmigrant visa for the period from September 22, 1973 to December 7, 1976, to study for his Ph.D. in aeronautics at Stanford University. Shoaee failed to renew his visa following its expiration, although he continued his studies at Stanford.

After the Iranian seizure of the United States Embassy in Teheran, the Attorney General promulgated 8 C.F.R. § 214.5, requiring every Iranian student in the United States to report to the INS. Shoaee complied with the reporting requirements, informing the INS that he was present in this country, and seeking an extension of his student visa to stay until September, 1980 to finish his thesis. The District Director of the INS denied this request on December 28, 1979.

The INS brought deportation proceedings against Shoaee, and issued an Order to Show Cause on May 1, 1980. Twelve days later, an immigration judge held that Shoaee was deportable, finding that the government had proved by "clear, convincing and unequivocal evidence" that Shoaee had remained in the United States beyond his visa period, and denying Shoaee's application to stay in this country until September, 1980.

Shoaee appealed his deportation order to the Board of Immigration Appeals. While the appeal was pending, the District Director of the INS reviewed Shoaee's request for reinstatement as a student and decided on November 6, 1980 to continue deportation proceedings. Also, Shoaee moved to remand his case to the immigration judge on the ground that the release of the American hostages eliminated the rationale for the anti-Iranian measures taken by the INS. The Board of Immigration Appeals, however, rejected the motion to remand, and affirmed the decisions of the immigration judge and the District Director. The Board considered and denied various constitutional arguments concerning the deportation of Iranian students by the INS. Shoaee petitioned for review of the Board's decision.

On November 25, 1981, we ordered Shoaee's appeal to be held in abeyance to allow him to file a motion to the Board of Immigration Appeals to claim political asylum. Shoaee made such a motion on December 4, 1981, which the Board denied on April 29, 1982. The Board found that Shoaee had failed to establish that he had a well-founded fear of persecution on account of race, religion, nationality, or membership in a particular social or political group.[1]

Shoaee appeals. He presents a wide variety of arguments. He contends, for example, that the District Director abused his discretion in denying his petition to extend his stay in the United States, and that deportation proceedings against him should be suspended even though he stayed in the United States after the expiration of his visa because he was in substantial compliance with the requirements for a nonimmigrant student visa. In addition, Shoaee argues that the INS regulations concerning Iranians in the United States violate the

---

1. We granted Shoaee's motion to reopen his appeal on July 7, 1982, although that order was vacated and a new motion granted on August 2, 1982. Shoaee apparently did not file a timely motion to appeal his denial of asylum, and the government claimed in its brief that we were without jurisdiction to hear the asylum issue because of the failure to appeal. A motions panel, however, granted Shoaee's request that we construe his supplemental opening brief of July 17, 1982 as a petition for review of the Board's April 29 denial of the asylum request. The government does not challenge the panel's decision.

constitutional mandate of separation of powers, and that, in any case, the regulations ceased to apply to him following the release of the American hostages in January, 1981. Finally, Shoaee claims that the Board of Immigration Appeals erred in refusing to grant his motion to reopen his case to submit a petition for asylum in the United States. We discuss each issue in turn.

## II.

### DISCUSSION

#### A. *Application for Visa Extension*

In *Ghorbani v. Immigration and Naturalization Service,* 686 F.2d 784, 791 (9th Cir.1982), we held that our jurisdiction does not extend to a review of a discretionary decision of an INS District Director, such as the Director's refusal to reinstate Shoaee's visa. While not mentioning *Ghorbani* by name, Shoaee argues in effect that its reasoning should not apply here because the President usurped the discretionary authority of the District Directors to evaluate petitions by Iranian students for visa extensions. This argument has no merit.

The Attorney General promulgated 8 C.F.R. § 214.5 as part of the President's effort to gain freedom for the hostages in Teheran. But the regulation merely required all Iranian students to report to the INS, and to present evidence that they were enrolled at an American educational institution. While some district directors may have shared the anti-Iranian views then held by many Americans, there is no evidence that the discretion of the District Directors to grant extensions of nonimmigrant student visas was usurped by 8 C.F.R. § 214.5, or by any action of the President. Thus, *Ghorbani* controls. We are therefore without authority to review the District Director's decision.

#### B. *Substantial Compliance with the Visa Requirements*

For the INS to deport a nonimmigrant "overstay," it must prove by clear and convincing evidence that the petitioner was admitted as a nonimmigrant for a specific period, that the period has elapsed, and that the petitioner is still in this country. *See Cabuco-Flores v. Immigration and Naturalization Service,* 477 F.2d 108, 110 (9th Cir.), *cert. denied,* 414 U.S. 841, 94 S.Ct. 98, 38 L.Ed.2d 78 (1973). In the present case, Shoaee admitted that he was authorized to enter this country as a nonimmigrant student until December 7, 1976, that that date had passed, and that he was still present in the United States. Shoaee is therefore deportable as an overstay.

Shoaee contends, however, that the deportation proceedings against him should have been suspended because he was in substantial compliance with the requirements for a nonimmigrant student visa. He relies on *Mashi v. Immigration and Naturalization Service,* 585 F.2d 1309 (5th Cir. 1978), which overturned an INS decision to deport a student who took 10 hours of classes a week on the advice of his professor, rather than the required 12 hours for full-time student status.

In *Ghajar v. Immigration and Naturalization Service,* 652 F.2d 1347 (9th Cir.1981), however, we considered and rejected the argument Shoaee now makes. In that case, we held that *Mashi* does not apply to an Iranian student who had overstayed the expiration of her visa by two years. We pointed out that "substantial compliance with the requirements for student status ... cannot excuse her failure to obtain an extension of stay" following the expiration of her student visa. *Id.* at 1348. It is the same here. Shoaee waited three years before seeking an extension of his visa. It is not a mere "technical" violation which must be overlooked by the officials charged with enforcing immigration law. *Id.*

#### C. *Separation of Powers*

Shoaee argues that the INS regulations concerning Iranians in the United States are unconstitutional because: (1) the President's use of regulations as a tool of foreign policy was accomplished without a grant of power to the President from Congress, and was therefore in violation of Article I, Section 8, Clause 4 of the United States Consti-

tution;[2] (2) the actions of the INS were "penal in nature and affect [sic]," and thus in violation of Article I, Section 8, Clause 4; and (3) the actions of the INS were quasi-judicial, and thereby derogated from the constitutional mandate of separation of powers. These arguments are without merit.

■ First, while a President's actions in conducting foreign policy may be unconstitutional unless there is express or implied congressional authorization for those actions, *see Dames & Moore v. Regan,* 453 U.S. 654, 668–69, 101 S.Ct. 2972, 2981–82, 69 L.Ed.2d 918 (1981) (citing to *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 637, 72 S.Ct. 863, 871, 96 L.Ed. 1153 (1952) (Jackson, J., concurring)), the Immigration and Nationality Act, 8 U.S.C. §§ 1103(a), 1184(a), and 1251(a)(9), provides a statutory basis for the INS regulations concerning Iranians in the United States. *See Narenji v. Civiletti,* 617 F.2d 745, 747 (D.C.Cir.1979), cert. *denied,* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *Shamsian v. Ilchert,* 534 F.Supp. 178, 184–85 (N.D.Cal.1982). *See also Yassini v. Crosland,* 618 F.2d 1356 (9th Cir.1980).

■ Second, it is long established that "deportation, while it may be burdensome and severe for the alien, is not a punishment." *Mahler v. Eby,* 264 U.S. 32, 39, 44 S.Ct. 283, 286, 68 L.Ed. 549 (1924). *See Harisiades v. Shaughnessy,* 342 U.S. 580, 594–95, 72 S.Ct. 512, 521–22, 96 L.Ed. 586 (1952); *Rubio de Cachu v. Immigration and Naturalization,* 568 F.2d 625, 627–28 (9th Cir.1977). Deportation proceedings are not transformed into criminal proceedings when the substantive law governing them is altered, pursuant to congressional authorization, to meet the demands of American foreign policy. In any event, Shoaee has not shown that deportation proceedings would be in violation of Article I, Section 8, Clause 4, even if they were penal in nature.

■ Finally, it is settled law that Congress can delegate "quasi-judicial" powers such as fact finding to administrative agencies, subject to judicial review, without violating the constitutional mandate of separation of powers. *E.g., Atlas Roofing Co. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 450, 97 S.Ct. 1261, 1266–67, 51 L.Ed.2d 464 (1977).

## D. *Effect on Regulations of Release of Hostages*

■ Shoaee asserts that the INS regulations concerning Iranians ceased to apply to him following the release of the American hostages in January, 1981, and that his case therefore should be remanded to the District Director for a *de novo* review. We disagree.

The Iranian regulations were repealed on April 24, 1981. But their repeal was prospective only. 46 Fed.Reg. 25597, 25599 (1981). They therefore still govern Shoaee's deportation proceedings. And, as one court points out, since the regulations were within the President's constitutional authority to promulgate under his statutory and foreign policy powers, they are also within his authority to repeal whenever he decides that repeal is necessary. *Shamsian,* 534 F.Supp. at 185. It is not for the courts to second-guess that decision.

## E. *Asylum Claim*

■ Shoaee moved to reopen his case to allow him to submit an application for political asylum under section 243(h) of the Refugee Act of 1980, 8 U.S.C. § 1253(h). That statute provides that an alien shall not be deported "if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion."

The Board of Immigration Appeals stated that to grant Shoaee's motion, it would have to find that Shoaee presented prima facie evidence that were he to return to

**2.** Article I, Section 8, Clause 4 of the Constitution provides in part that "The Congress shall have the Power ... to establish an Uniform Rule of Naturalization ... throughout the United States."

Iran there is clear probability that persecution would be directed at him. The Board found that Shoaee failed to meet his burden of showing that he had a "well-founded fear" that he would suffer persecution.

Shoaee argues, however, that the Board of Immigration Appeals erred in using a "clear probability" standard in evaluating his motion to remand to claim asylum status. Shoaee draws support from a recent Second Circuit decision, *Stevic v. Sava*, 678 F.2d 401 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983), which held that the Board should evaluate claims for asylum under "a somewhat more generous" standard than "clear probability." [3] *Id.* at 406. *Accord Reyes v. Immigration and Naturalization Service,* 693 F.2d 597 (6th Cir.1982); *but see Rejaie v. Immigration and Naturalization Service,* 691 F.2d 139 (3d Cir.1982). We do not need to reach the standard for asylum issue, however, because we hold that Shoaee's claim would fail even under the test articulated by the *Stevic* court.

Shoaee bases his claim for asylum on three premises. First, he comes from a family which was closely connected with the Shah's regime. His father fled from Iran to avoid a trial before a "People's Tribunal," and although Shoaee's father has returned to Teheran, he has had his civil service pension cut off. Shoaee's brother has been fired from his job with the Bank of Iran and Middle East, and has not been permitted to travel to the United States for open heart surgery. Second, Shoaee, through his studies in aeronautics, has worked in the American defense establishment. He believes that the Iranian government might suspect him of being a spy. Third, Shoaee has spoken out vehemently against the present regime in Iran. He thinks that some of his opponents in these debates may have informed the present Iranian government of his activities.

There is substantial evidence to support the Board's rejection of Shoaee's petition for asylum based on these claims.[4] As the Board noted, Shoaee's fears "are mainly related to actions taken against his father," not to persecution directed at Shoaee himself.[5] Shoaee admits that his father and brother are both still alive, and living in Teheran. Moreover, Shoaee has put forward no concrete evidence to support his contention that he might be persecuted because of his opinions and American associations were he to return to Iran. He has only established that it is likely his family's political fortunes have declined. This is not enough. Nor are mere assertions of possible fear on the part of the petitioner for asylum, even under the standard of review of the *Stevic* court, enough to meet his burden of proof. *Cf. Agustin v. Immigration and Naturalization Service,* 700 F.2d 564, 565–66 (9th Cir.1983).

AFFIRMED.

---

3. The *Stevic* court would impose on the petitioner the burden of showing "good reason" to fear persecution. 678 F.2d at 405.

4. We review the Board's findings under a substantial evidence standard. *McMullen v. Immigration and Naturalization Service,* 658 F.2d 1312, 1316 (9th Cir.1981).

5. The Board explained in its April 29, 1982 decision:

   The fears expressed by the respondent are mainly related to actions taken against his father. However, we note that the respondent's father was never imprisoned by the Iranian authorities; he was not only allowed to remain at large during the hearings against him, but was able to exit the country and later return. Thus a serious doubt exists as to whether the father, himself, possessed a well-founded fear of being persecuted upon his return to Iran. Further, we also conclude that it is pure conjecture to surmise the respondent would be persecuted because of his brother's particular situation in Iran or because of his Western education as an aerospace engineer or computer scientist.