Seyed Mohammad SAMIMI, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 82–7563.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1983.

Decided Sept. 2, 1983.

---

Barbara R. Adams, San Jose, Cal., for petitioner.

James A. Hunolt, Margert J. Perry, Washington, D.C., for respondent.

Before WISDOM,* Senior Circuit Judge, and SCHROEDER and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

Petitioner, Seyed Mohammad Samimi, entered the United States as a non-immigrant student. He overstayed his authorized time, submitting a late application for an extension.[1] The INS began deportation proceedings grounded on his overstay. The Immigration Judge found him deportable. The Board of Immigration Appeals affirmed and denied a subsequent motion to reopen based on an application for asylum. The BIA found that Samimi failed to explain adequately his failure to pursue asylum at the prior hearing and had failed to make a prima facie showing of likelihood of persecution. Samimi appeals

---

* Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. Samimi was authorized to attend school at Lakeside High School in Oakland, California. After attending Lakeside for one semester, Samimi requested and received permission to transfer to Procter Hug High School in Reno, Nevada. Samimi attended Procter Hug High for one semester and then transferred back to Lakeside, this time without permission. Samimi contends that he submitted an application for permission to transfer after he had made the transfer. We need not address, however, the effect on Samimi's status of his failure to obtain advance permission to transfer schools. The INS sought deportation solely on the ground that he failed to leave the country or to get an extension of stay before November 25, 1978.

in this court the BIA's order of deportation and its denial of the motion to reopen. We affirm the determination of deportability, but remand for a hearing on the application for asylum.

*Discussion*

### I. Deportation

Samimi admitted the facts necessary to a finding that he is deportable as an overstay. He argues, however, that because he had a pending, albeit late, application for extension and remained a full-time student at all times, the violation of status for which he was found deportable was only technical and non-willful. He cites *Mashi v. INS,* 585 F.2d 1309 (5th Cir.1978) for the proposition that foreign students should not be deported for such *de minimis* violations. As this court observed in *Ghorbani v. INS,* 686 F.2d 784, 785–86 (9th Cir.1982), however, *Mashi* does not stand for that proposition; any language supporting Samimi's contention is dictum. This court in *Ghorbani* left open the question "whether there could be circumstances when a violation would be so technical as not to justify deportation." *Id.* at 786. The facts of the instant case, however, do not present such a technical violation.

Clearly, in the absence of the late application for extension, Samimi would be deportable as an overstay despite compliance with student status. *Ghajar v. INS,* 652 F.2d 1347, 1348 (9th Cir.1981) (per curiam); 1A C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 4.9 (1982). The *Ghajar* decision also contains clear language to the effect that failing to file an application for an extension *prior to* the expiration of authorized stay is a violation of status sufficient to predicate deportation. 652 F.2d at 1348; *see also Ghorbani,* 686 F.2d at 786. Accordingly we hold that a nonimmigrant may be deported for violation of student status despite the fact that he has submitted a late application upon which no action has been taken that would cure status if granted. The INS and at least one other circuit concur in this rule. *Sadegh-Nobari v. INS,* 676 F.2d 1348, 1351 (10th Cir.1982); *In re Teberen,* 15 I. & N.

Dec. 689, 690 (1976). Thus, an immigrant is deportable as an overstay when his period of admission expires *unless* he receives an extension. Under this rule, Samimi is deportable; we affirm that determination of the BIA.

### II. Political Asylum

Samimi moved the BIA to reopen his deportation proceeding based on his application for political asylum under 8 U.S.C. § 1253(h) (Supp. V 1981); *see also* 8 C.F.R. 208.3(b) (1983). The BIA has sole discretion to determine under what circumstance a proceeding should be reopened. *INS v. Jong Ha Wang,* 450 U.S. 139, 143–44 n. 5, 101 S.Ct. 1027, 1030–31 n. 5, 67 L.Ed.2d 123 (1980) (per curiam). To justify reopening on the basis of an asylum claim, a petitioner must make a prima facie showing that he is eligible for the relief sought, *Jong Ha Wang,* 450 U.S. at 141, 101 S.Ct. at 1029; *In re Martinez-Romero,* 18 I. & N. Dec. No. 2872, at 6 (1981); and explain his failure to raise the asylum claim in the previous proceeding. 8 C.F.R. §§ 3.2, 208.11 (1983). Somewhat related to this second requirement is the requirement that the petitioner offer new, material evidence that could not have been discovered and presented at the former hearing. 8 C.F.R. §§ 3.2, 103.5, 242.22 (1983). The BIA denied Samimi's motion for failure to make a prima facie showing and failure to explain why the asylum request was not made in the prior proceeding.

The INS argues, and the BIA found, that Samimi failed to explain adequately his failure to raise the asylum claim in the prior hearings as required by regulation. 8 C.F.R. §§ 3.2, 208.11 (1983). Samimi alleges that he was under age and that his guardian in the United States restrained him from making the asylum claim until he turned 18, "despite advice from friends, INS, and his attorney." Samimi points out that he made his asylum request promptly upon coming of age. Samimi alleges he did not know about the treatment of his family in Iran at the time of the prior hearings. The BIA noted that Samimi was represent-

ed by counsel in all hearings and never mentioned his need for asylum before the motion to reopen.

The INS does not dispute Samimi's allegation that he was restrained by his guardian from making the claim. Nor does the INS adequately refute Samimi's assertion that he was unaware at the time of the earlier proceeding of the condition of his relatives. Given Samimi's age and the dire consequences which could attend his return to Iran, as indicated by his affidavit in support of the motion to reopen, we hold that the BIA abused its discretion in denying the petition to reopen because of Samimi's failure to raise the asylum claim in the earlier proceeding.

Although the BIA's decision to reopen can be reversed only for abuse of discretion, the Ninth Circuit holds that refusing to reopen when the petitioner has presented a prima facie showing of entitlement to relief is an abuse of discretion. *Villena v. INS,* 622 F.2d 1352, 1359 (9th Cir.1980) (en banc). Therefore, we must determine whether Samimi presented a prima facie showing that there is a likelihood that he would be persecuted by the government if he returned to Iran. *See McMullen v. INS,* 658 F.2d 1312, 1315 (9th Cir.1981).

In an effort to make the required showing, Samimi claimed that he would be a target of government persecution because of his middle class status, his father's family ties to the Shah's wife, his refusal to take part in "required religious processes," and his outspoken political opposition to the Khomeini government. He alleges that agents of the Khomeini government have marked him as a traitor because of public statements he has made while in this country. Samimi supported these allegations

with an affidavit in which he states that his relatives have moved to Europe because they oppose the Khomeini government and justly feared for their safety, that his father's land was taken away after the revolution, and that his relatives have warned him it would be dangerous to return to Iran. Samimi alleges that his father has not been allowed to make a living or to leave the country. Samimi submitted a list of relatives who he claims are living in Europe as "refugees" and newspaper articles which report large-scale executions in Iran of members of political groups.

The determination whether a petitioner has made a prima facie showing warranting a full hearing must rest upon the facts of each particular case. *See Banks v. INS,* 594 F.2d 760, 762 (9th Cir.1979) (per curiam). In the present case, we believe that Samimi has made a sufficiently strong showing to justify a full hearing on his claim for asylum. Particularly, we consider Samimi's allegations that a number of his relatives are refugees in other countries, that his father's land and livelihood have been taken, and that he personally has been marked as a traitor to the present Iranian government because of his outspoken opposition. Although independently these claims may not comprise the required prima facie showing, combined they raise a sufficiently serious question concerning Samimi's fate should he return to Iran that a more thorough consideration of the claims is indicated.[2] A finding that a prima facie showing has been made, however, only entitles Samimi to a hearing and does not preordain the result of that hearing. *See Reyes v. INS,* 673 F.2d 1087, 1089 (9th Cir. 1982). We express no opinion concerning whether Samimi should be granted the relief he seeks; that determination must be

2. Although similarities exist between the present case and the case of *Shoaee v. INS,* 704 F.2d 1079 (9th Cir.1983), we believe *Shoaee* is factually distinguishable on two bases. First, in *Shoaee,* the only relative who left Iran was Shoaee's father, who later returned to live in Teheran, whereas Samimi has a large number of relatives who are refugees, and have warned him that it would be dangerous to return to Iran. Second, Samimi submitted documentary

evidence of large-scale executions in Iran of members of political groups who, like Samimi, oppose the present government. There is no mention in *Shoaee* of the large-scale execution of dissidents. Nor is there any evidence that the *Shoaee* panel took judicial notice of those conditions in Iran. We believe these factors tip the balance in favor of requiring a hearing on Samimi's claim. .

made by the Attorney General and his designates. *See* 8 U.S.C. § 1253(h)(1) (Supp. V 1981).

Accordingly, we remand this case to the BIA with instructions to allow Samimi to present his claim fully.[3]

---

**3.** Samimi argues that the INS violated his right to due process in refusing to grant him a full hearing. *See Haitian Refugee Center v. Smith,* 676 F.2d 1023 (5th Cir.1982). He also argues that the INS violated its own regulations by failing to take his testimony, *see* 8 C.F.R. §§ 208.6, 208.10, 242.17(c) (1983), and failing to get a recommendation from the State Department on his asylum request, *see* 8 C.F.R. § 208.10(h) (1983). Because we remand for a hearing on the application for asylum, we need not address these contentions.