Maria **CORADO RODRIGUEZ,** and **Juan Carlos Corado Moreno,** Petitioners,

v.

**IMMIGRATION & NATURALIZATION SERVICE,** Respondent.

No. 85–7417.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 7, 1986.

Submitted Sept. 10, 1987.

Decided Sept. 25, 1987.

As Amended Nov. 5, 1987.

J. Blaine Anderson, Circuit Judge, concurred in part, dissented in part and filed opinion.

Before ANDERSON, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

## I. *Introduction*

Maria Corado Rodriguez and Juan Carlos Corado Moreno (the "Corados"), a Salvadoran mother and her young son, petition for review of the Board of Immigration Appeals' (BIA) decision dismissing their appeal of their final deportation orders and denying their motion to reopen. They claim that the BIA erred in dismissing their appeal despite the incompetence of their counsel and the absence of a full and fair hearing prior to deportation. The Corados also aver that, contrary to the BIA's holding, they did establish a prima facie case of persecution and, consequently, their motion to reopen should have been granted. Because we reverse the BIA's denial of their motion, we express no opinion on their due process claim alleging incompetence of counsel and the denial of a full and fair hearing.

## II. *Proceedings Below*

The Corados were charged with having entered the United States in July 1984 without inspection by an immigration officer, in violation of Section 241(a)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(2) (1982). At the deportation proceeding on January 4, 1985, petitioners conceded deportability. They did not apply for asylum or withholding of deportation because their nonattorney, INS–accredited counsel mistakenly assumed that persecution by nongovernmental groups could not form the basis for such relief. The immigration judge (IJ) found them deportable but granted them ninety days voluntary departure to April 4, 1985.

Petitioners, represented for the first time by an attorney, appealed the deportation decision to the BIA and submitted a motion to reopen on January 14, 1985. The Board dismissed their appeal, holding that the IJ had conducted a full and fair hearing. The BIA also decided that the Corados had

Della Hinn Bahan, Ellen L. Lutz, Joel R. Reynolds, and Felicia A. Marcus, Los Angeles, Cal., for petitioners.

Stewart Deutsch, Dept. of Justice, Washington, D.C., for respondent.

failed to establish a prima facie case of persecution and, hence, denied their motion to reopen, after first redesignating it a motion to remand.

On July 22, 1985, the Corados filed a timely petition for review with this court. They allege that the deportation proceeding deprived them of due process because of incompetence of counsel and that the motion to reopen established a prima facie case.

### III. *Analysis*

#### A. *Motion to Reopen/Remand*

■ Along with their appeal of the IJ's deportation order, the Corados filed a motion to reopen with the BIA. Since the appeal was pending and the Board had not yet "rendered a decision," 8 C.F.R. § 3.2 (1987), the BIA properly treated their motion as a "motion to remand to the immigration judge." *See* C. Gordon & G. Gordon, 8 *Immigration Law and Procedure* § 62.08[5], at 62–39 (1987). We will accordingly hereinafter refer to the Corados' motion as a motion to remand.

■ The formal requirements of the motion to reopen and those of the motion to remand are for all practical purposes the same. As explained in the leading treatise on immigration law:

> Since a motion to remand is so similar to a motion to reopen, the motion to remand should be drafted in conformity with the regulations pertinent to motions to reopen, 8 CFR 3.2 and 3.8.

C. Gordon & G. Gordon, *supra*, at 62–41.

The regulations issued by the INS thus describe the requirements for a motion to reopen:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such

relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

8 CFR § 3.2 (1987). *See* R. Steel, *Immigration Law* § 14:57 at 468 (1985). We have distilled this administrative language into two requirements. Petitioners "must [1] make a prima facie showing that [they are] eligible for the relief sought, *INS v. Jong Ha Wang,* 450 U.S. 139, 143–44 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981) (per curiam), and [2] explain [their] failure to present the evidence in the previous proceeding. 8 C.F.R. §§ 3.2, 3.8." *Aviles-Torres v. INS,* 790 F.2d 1433, 1436 (9th Cir.1986) (parallel citations omitted). We shall consider the two requirements in reverse order.

#### B. *Explanation of Failure to Seek Asylum or Withholding of Deportation Before the IJ*

■ The Corados claim that they explained the facts described in their affidavit in support of their motion to remand to their representative at the deportation hearing, Ms. Margie Sapiens of the United States Catholic Conference. Ms. Sapiens, though not an attorney, is accredited by the INS to represent indigent aliens in proceedings before the agency pursuant to 8 C.F.R. § 292.1(a)(4) (1987). By her own admission, Ms. Sapiens advised the Corados against applying for asylum or requesting withholding of deportation. Ms. Sapiens based such advice on the mistaken assumption that persecution by a nongovernmental group could not form the basis for the conferring of asylum status or for the issuance of an order prohibiting deportation. *Cf. Zepeda-Melendez v. INS,* 741 F.2d 285, 289 (9th Cir.1984); *McMullen v. INS,* 658 F.2d 1312, 1315 (9th Cir.1981). The Corados realized that they could rely on nongovernmental persecution only when they obtained the services of an attorney to present their appeal and he advised them of that fact.

The Corados thus have met the second requirement for a motion to remand. They

have adequately justified their failure to raise their asylum and withholding claims in the deportation proceeding before the IJ. And they have supported such justification with affidavits from present counsel as well as from Ms. Corado Rodriguez.

The Corados have explained their failure to raise the asylum and withholding of deportation claims at least as adequately as the petitioner in *Samimi v. INS*, 714 F.2d 992 (9th Cir.1983). In *Samimi* the petitioner alleged that "he was under age and that his guardian in the United States restrained him from making the asylum claim until he turned 18, 'despite advice from friends, INS, and his attorney.'" 714 F.2d at 994. Here, the Corados did not even know that they could have made an asylum or withholding of deportation claim. Their representative informed them that they could not assert the claims and stated that she would not assist them in doing so. Moreover, unlike in *Samimi*, in the present case the BIA did not find that the Corados had failed to explain adequately the reasons for not raising the claims earlier. To the contrary, the Board assumed that they had "offered a reasonable excuse" but then decided that they had failed to establish a prima facie case for remanding. Thus, unlike in *Samimi*, here we need not "hold that the BIA abused its discretion in denying the petition to [remand] because of [petitioners'] failure to raise the asylum claim in the earlier proceeding." *Id.* at 995.

The Corados do not have to demonstrate that counsel performed so incompetently as to constitute a denial of due process. They only need to provide a reasonable explanation for not seeking asylum or the withholding of deportation before the IJ. That they have done.[1]

C. *Prima Facie Case*

■ 1. *Standards of Proof.* The Corados are entitled to mandatory withholding of deportation if their "life or freedom would be threatened in [El Salvador] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (1982). In *INS v. Stevic*, the Supreme Court held that "the 'clear probability of persecution' standard remains applicable to § 243(h) withholding of deportation claims." 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). The Court explained that under the clear probability standard "[t]he question ... is whether it is more likely than not that the alien [will] be subject to persecution." *Id.* at 424, 104 S.Ct. at 2498.

The Corados qualify for a discretionary grant of asylum if they show a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. §§ 1101(a)(42), 1158(a) (1982). The well-founded fear standard "play[s] no part", in the decision whether to withhold deportation, *INS v. Cardoza-Fonseca*, —— U.S. ——, 107 S.Ct. 1207,

1. The concurrence and dissent relies on *Roque-Carranza v. INS*, 778 F.2d 1373 (9th Cir.1985) and *Aviles-Torres v. INS*, 790 F.2d 1433 (9th Cir.1986). In *Roque-Carranza* the petitioner presented his claim regarding his counsel's alleged failures to present evidence directly to the court. He did not submit that information to the BIA or request the BIA to reopen the proceedings. We held that we would not permit petitioner to by-pass the BIA and stayed the order of deportation to permit him to file a motion to reopen. Here, the Corados followed the proper procedure and filed a motion to remand with the BIA along with supporting affidavits. Thus, they complied fully with the procedure we mandated in *Roque-Carranza*. *Aviles-Torres* does not consider the standards to be applied in determining whether a failure to raise a claim or to present evidence at the initial hearing is excusable. In that case there was no dispute that the evidence in question was unavailable at the time of the first hearing. *Aviles-Torres* deals exclusively with the question of whether petitioner presented sufficient evidence *on the merits* to warrant reopening. In any event, we note that the "evidence" in *Aviles-Torres* consisted primarily of a newspaper article, while, here, the Corados presented affidavits. We have no doubt that the material the Corados submitted to the BIA constitutes "evidence" under *Aviles-Torres* and not merely "allegations", as the dissent and concurrence states. In short, here the issue was fully presented to the BIA and the showing necessary for a remand was made. Accordingly, we must respectfully disagree with our dissenting and concurring colleague as to the nature of the remand order we all agree we are required to issue.

1212, 94 L.Ed.2d 434 (1987), and "is in fact 'more generous' than the clear-probability test." *Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1282 (9th Cir.1985). *See also Hernandez-Ortiz v. INS,* 777 F.2d 509, 514 (9th Cir.1985); *Sarvia-Quintanilla v. INS,* 767 F.2d 1387, 1393 (9th Cir.1985). In *Cardoza-Fonseca,* the Supreme Court concluded:

> Our analysis of the plain language of the Act, its symmetry with the United Nations Protocol, and its legislative history, lead inexorably to the conclusion that to show a "well-founded fear of persecution," an alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country.

107 S.Ct. at 1222.

The court thus explained some of the differences between the two standards:

> To begin with, the language Congress used to describe the two standards conveys very different meanings. The "would be threatened" language of § 243(h) has no subjective component, but instead requires the alien to establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation. See *Stevic, supra.* In contrast, the reference to "fear" in the § 208(a) standard obviously makes the eligibility determination turn to some extent on the subjective mental state of the alien. "The linguistic difference between the words 'well-founded fear' and 'clear probability' may be as striking as that between a subjective and an objective frame of reference.... We simply cannot conclude that the standards are identical."

*Id.* at 1212–13 (quoting *Guevara Flores v. INS,* 786 F.2d 1242, 1250 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987)). The Court explained that even though the well-founded fear standard has an objective component, the alien does not have to show that persecution is more likely than not to take place.

> That the fear must be "well-founded" does not alter the obvious focus on the individual's subjective beliefs, nor does it transform the standard into a "more like-

ly than not" one. One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurence taking place.

*Id.* at 1213. *See also Hernandez-Ortiz v. INS,* 777 F.2d at 513.

2. *Improper Application of Standards of Proof.* Initially, the BIA, in denying the Corados' motion to remand, correctly acknowledged that the clear probability standard applied to withholding of deportation and the well-founded fear standard applied to asylum. But, the BIA then made it clear that it found no difference between the two standards by specifically citing to *In re Matter of Acosta,* Interim Decision No. 2986 (BIA March 1, 1985), and concluding that "the eligibility standards for withholding of deportation and asylum are not meaningfully different and, in practical application, converge."

■ The recent Supreme Court decision in *Cardoza-Fonseca,* as we have noted *supra,* held unequivocally that the standards are not identical and do not converge. The difference between the two standards, as described in *Cardoza-Fonseca,* is meaningful and significant. The well-founded fear test is clearly more generous; some applicants who are unable to establish a clear probability of persecution will nevertheless be able to demonstrate a well-founded fear of it.

"[O]ur case law quite clearly establishes that the legal difference between 'clear probability' and 'well-founded fear' must be respected." *Rebollo-Jovel v. INS,* 794 F.2d 441, 444 (9th Cir.1986). *See Cardoza-Fonseca,* 107 S.Ct. at 1212, 1221. When the BIA states that it views the "well-founded fear" and "clear probability" standards as identical, and thereby requires a showing that persecution is "more-likely-than-not" to be eligible for asylum, the BIA must be reversed. *Cf. Cardoza-Fonseca,* 107 S.Ct. at 1222. To the extent that any of our cases prior to the Supreme Court's decision in *Cardoza-Fonseca* suggest a contrary result, they are no longer controlling. *Cf., e.g., Chatila v. INS,* 770 F.2d 786, 790 (9th Cir.1985).

The government argues that the BIA decided that the Corados had not met the statutory standard of eligibility for asylum, "regardless of whether [their] claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility,' or a 'good' or 'valid reason to fear' persecution." The government contends that this statement shows that the BIA made the determination that the Corados do not qualify for asylum irrespective of which of the different standards applies.

The BIA frequently inserts the catchall statement set forth above in its asylum decisions. *See e.g., Vides-Vides v. INS,* 783 F.2d 1463, 1468 (9th Cir.1986); *Rebollo-Jovel v. INS,* 794 F.2d at 446; *Cardoza-Fonseca v. INS,* 767 F.2d 1448, 1450 (9th Cir.1985). In *Vides-Vides,* in which we reviewed a pre-*Acosta* BIA decision, we specifically left open the question whether in cases in which we review post-*Acosta* decisions we should accept that boiler plate language as evidence that the Board recognized the difference between the two standards and denied relief under each. 783 F.2d at 1468 n. 3. "In light of *Acosta,*" we said in *Vides-Vides,* "it may be appropriate henceforth to require a more explicit statement from the BIA, that, even were it to apply a more generous standard such as required in this circuit, it would still deny the asylum petition." 783 F.2d at 1468 n. 3.[2]

Subsequently, in *Rebollo-Jovel v. INS,* we again left open the question of how we should review post-*Acosta* BIA decisions. Although in *Rebollo-Jovel* we determined that the Board's statements in that case sufficiently demonstrated a recognition of the difference in standards in asylum and withholding of deportation cases, we were there dealing with a pre-*Acosta* BIA decision. Judge Beezer, one of the two judges to join in the holding in *Rebollo-Jovel,* wrote separately "to point out that the

decision of the Board of Immigration Appeals in this case was rendered prior to its decision in *In re Matter of Acosta....*" *Rebollo-Jovel v. INS,* 794 F.2d at 448 (Beezer, J., concurring). He explained that for that reason *Rebollo-Jovel* "cannot answer the question, which was expressly left open in our previous decision in *Vides-Vides v. INS,* 783 F.2d 1463 (9th Cir.1986) as to what effect the BIA's holding in *Acosta* should have upon our review of future BIA decisions which use similar language in disposing of asylum claims." *Id.*

We must now answer the question we posed in *Vides-Vides* and left open again in *Rebollo-Jovel:* In post-*Acosta* cases, should we require the BIA to make an explicit statement that it is applying a more generous standard to the asylum claim than to the petition for withholding of deportation? We answer that question in the affirmative.

Normally we would accept an assertion that petitioners do not qualify for relief irrespective of the standard used as an indication that the Board assessed the claim under differing standards and found it wanting under each—or, in the alternative, that it found the claim wanting under the most generous standard. We must be more skeptical, however, when the Board repeatedly states that it views the stricter clear probability and the more generous well-founded fear standards as identical and uses language ordinarily employed in reference to the clear probability requirement to describe the well-founded fear test. In such circumstance, when the Board states that the petitioner may not prevail under any of the standards, it is likely that it is actually assessing the claim only under the more demanding test. We are therefore reluctant to accept in post-*Acosta* cases the recitation of the phrase "[petitioner is not eligible for asylum] regardless of whether her claim is assessed in terms of demonstrating a 'clear probability,' a

---

2. In *Acosta,* the BIA declared:

It has been our position that as a practical matter the showing contemplated by the phrase "a well-founded fear" of persecution converges with the showing described by the phrase "a clear probability" of persecu-

tion.... Accordingly, we have not found a significant difference between the showing required for asylum and withholding of deportation.

*Acosta,* slip op. at 5 (citations omitted).

'realistic likelihood,' a 'reasonable possibility,' or a 'good' or 'valid reason to fear' persecution" as evidence that the Board properly considered each of the standards, or simply applied the most generous test. As stated in *Rebollo-Jovel v. INS,* "[w]e address questions relating to the standard applied on a case-by-case basis, deciding each not on the basis of 'certain magic words,' but on the basis of what the Board actually did." 794 F.2d at 444 (quoting *Vides-Vides v. INS,* 783 F.2d at 1468–69).

In this case, the Board reiterated the position that it had advanced in *Acosta* —that the two standards *"converge"* and that they are not meaningfully different.[3] In addition, we think that the BIA opinion reveals that the agency applied the stricter, clear probability requirements to both the asylum claim and the withholding of deportation petition.

First, the BIA defined "well-founded fear" using terms that we have used to define "clear probability." We have held that the clear probability standard requires an alien's fear of persecution to have a sound basis in *external, objective facts* that show *it is likely* the alien *will become* the victim of persecution. *Cf. Hernandez-Ortiz,* 777 F.2d at 513 (the well-founded fear standard also has a *subjective* component and the objective component is satisfied if persecution is a "reasonable possibility"). Second, just as it did in *Cardoza-Fonseca,* the BIA considered whether the Corados had demonstrated that they "would" be persecuted:

> Even assuming the circumstances most favorable to the respondent[s'] case, [they have] failed to show any reason why [they] individually *would* be singled out for persecution. *See Dally v. INS,* 744 F.2d 1191 (6th Cir.1984).... However, the [Corados have] shown no reason to believe that [they] *would* be a target of the guerillas, even if [their] speculations were substantiated.

(Emphasis added).[4] *Cf. Cardoza-Fonseca v. INS,* 767 F.2d at 1454. This, together with the BIA's specific reaffirmation in this case that there is no difference between the two eligibility standards, leads us to conclude that the BIA did not apply the lesser well-founded fear standard in determining whether the Corados were eligible for asylum relief.

We do not view the BIA's decision here or in *Cardoza-Fonseca* as aberrational but rather as representative of the BIA's post-*Acosta* view. In light of this conclusion, we are compelled "to require a more explicit statement from the BIA, that, even were it to apply a more generous standard such as required in this circuit, it would still deny the asylum petition." *Vides-Vides v. INS,* 783 F.2d at 1468 n. 3. We recognize that our requirement of an explicit statement acknowledging the existence of, and applying separately, a more generous standard in post-*Acosta* asylum cases will require a remand to the BIA in a number of instances. However, the error should not necessarily be a continuing one. The number of post-*Acosta* cases is finite, since we assume that the BIA returned to applying the proper standard in asylum cases upon issuance of the Supreme Court's *Cardoza-Fonseca* opinion, if not before.

In this case, we are required to do more than simply reverse and remand to the BIA for a redetermination under the proper standard, because the Corados have clearly met the requirements for a motion to remand to the IJ. The Corados adequately explained their failure to raise the asylum and withholding claims before the IJ and their affidavits have set forth a prima facie

---

**3.** In a footnote in *Cardoza-Fonseca,* the Supreme Court characterized the BIA's general position as equivocal and inconsistent but suggested that *Acosta* recognized the difference between the two standards. 107 S.Ct. at 1221 n. 30. The BIA's decision here makes it evident that for purposes of practical application the BIA in its post-*Acosta* cases treated the standards as identical, imposing the stricter standard on both asylum and withholding claims.

**4.** A further indication that the BIA is using the "clear probability" standard throughout its review of the Corados' petition is the BIA's citation to *Dally* as authority for its analysis. *Dally* specifically held that petitioner's asylum "requests must also be judged under the 'clear probability' standard" applicable to withholding of deportation requests. *Dally,* 744 F.2d at 1196 n. 6.

case for asylum as well as for withholding of deportation. *See* discussion *infra*. The proper relief, consequently, is to remand to the BIA with instructions to grant the motion to remand to the IJ. *See Hernandez-Ortiz v. INS,* 777 F.2d at 519.

■ 3. *The Corados Have Shown a Well-Founded Fear As Well As a Clear Probability of Persecution.* Corado Rodriguez, a Salvadoran woman, submitted an affidavit stating that armed men wearing masks had kidnapped and brutally killed her father, step-mother, half-brother, and half-sister. Her brother, Joaquin, had been decapitated approximately eight days prior to the kidnap-murder and her other brother, Andres, had been machine-gunned to death with his wife about two weeks earlier. Corado Rodriguez attributes the killings to the Salvadoran guerrillas in retaliation against her family's association with the government-supported rural militia. She decided to enter the United States without inspection leaving her son, Juan Carlos, behind in the care of a friend. Sometime thereafter, she learned that the woman in whose custody she had left Juan Carlos had died. She traveled to El Salvador to get her child and six months later, after raising enough money for the trip, she returned to the United States along with Juan Carlos.

These facts, which we must take as true, are obviously more than sufficient to make a prima facie case under the "well-founded fear" standard as well as under the stricter "clear probability" test. *Hernandez-Ortiz v. INS,* 777 F.2d 509 (9th Cir.1985). Like Hernandez-Ortiz, Corado Rodriguez "has described numerous specific incidents in which members of her family—a small, readily identifiable group—have been the victims of threats and acts of violence." *Id.* at 516.

The BIA's refused to grant Corado Rodriguez's petition because she "failed to show any reason why she individually would be singled out for persecution." That holding is wholly inconsistent with *Hernandez-Ortiz*, which we decided six months after the BIA's decision on this case. In *Hernandez-Ortiz* we held that

"[t]he fact that there have been a number of threats or acts of violence against members of an alien's family is sufficient to support the conclusion that the alien's life or freedom is endangered." *Id.* at 515. *See also Del Valle v. INS,* 776 F.2d 1407, 1413 (9th Cir.1985) ("[E]vidence ... suggest[ing] that [petitioner's] family has been particularly affected by the conditions in their country" helps in determining likelihood of persecution.); *Ananeh-Firempong v. INS,* 766 F.2d 621, 627 (1st Cir.1985) ("[E]vidence about treatment of one's family [is] probative of [a specific threat to the petitioner]."); U.S.High Comm'r for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status,* ¶ 43 at 13 (threat of persecution "need not be based on the applicant's own personal experience.... [Evidence concerning] relatives ... may well show that his fear ... of persecution is well founded.").

In sum, petitioners clearly established a prima facie case regardless of the standard and in all other respects met the requirements for a remand. *See Hernandez-Ortiz v. INS,* 777 F.2d at 519.

### IV. *Conclusion*

The BIA clearly erred in denying petitioners' motion to remand. The affidavits submitted by the Corados are more than sufficient to support their contentions that they had a well-founded fear and that there was a clear probability of persecution if they returned to El Salvador. We therefore reverse the decision below and remand with instructions to grant petitioners' motion to remand to the IJ for a hearing.

REVERSED and REMANDED.

J. BLAINE ANDERSON, Circuit Judge, concurring and dissenting:

I concur in much of what is stated, but I respectfully dissent from a portion of Judge Reinhardt's forceful majority opinion. I do so on a narrow ground.

It is, in my view, inappropriate for this court to direct the granting of the petitioner's motion, be it denominated a motion to reopen or to remand. We should merely

reverse for further proceedings and direct that the BIA reconsider and apply *Cardoza-Fonseca.* The decision to reopen or remand should be made in the first instance by the BIA.

The second requirement for reopening has never been addressed by the BIA and, on this record, it is doubtful that Corado-Rodriguez has satisfied that second requirement. There is no *evidence* to support her failure to present evidence at the previous hearing. *See, e.g., Aviles-Torres,* 790 F.2d 1433, 1436 (9th Cir.1986), 8 C.F.R. 3.2 and 3.8. There are *allegations* of ineffective assistance of counsel which may have prevented it. However, the BIA never decided that issue, holding instead that even assuming there was ineffective assistance of counsel, she did not establish a prima facie case. If we direct a grant of the motion to remand (reopen), we are saying, rather directly, that she satisfied the second factor because of ineffective assistance of counsel. This we should not, and, in my view, cannot do. *See Roque-Carranza v. INS,* 778 F.2d 1373 (9th Cir.1985). That issue has not been litigated nor decided and we should not do so on the basis of an incomplete appellate record.