15 F.3d 1085
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Alemitu GEBREGIORGIS, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 Nos. 92-70362, 92-70670.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1993.
Decided Jan. 12, 1994.
 
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alemitu Gebregiorgis appeals the Board of Immigration Appeal's ("BIA") order dismissing her appeal of an Immigration Judge's ("IJ") decision denying her asylum and withholding of deportation. She also appeals the BIA's denial of her motion to reopen the case. We affirm.
 
 
 3
 * Alemitu Gebregiorgis is an Ethiopian citizen and Jehovah's Witness. She lived in Ethiopia until 1987, working as a teacher and then for the Ministry of Education. From her retirement in 1986 until her departure from Ethiopia, Gebregiorgis received a government pension.
 
 
 4
 Since 1972, Gebregiorgis has been a Jehovah's Witness, a religion banned by the Ethiopian government until 1991, when the new government revoked the prohibition. The ban forced Gebregiorgis to practice her religion in secret, although she was open about her beliefs. Since Jehovah's Witnesses do not believe in participating in political activities, Gebregiorgis avoided joining women's political meetings and hid from government officials inquiring about her absence from these affairs. In response to Gebregiorgis' refusal to participate in politics, the government threatened her with arrest and confiscated her ration card.
 
 
 5
 In 1987, Gebregiorgis traveled to Italy, where she remained for fifteen months before leaving for the United States. Gebregiorgis entered the United States on July 13, 1988. At a February 9, 1990 hearing on her applications for asylum and withholding of deportation, the IJ held that Gebregiorgis had not established a well-founded fear of persecution in Ethiopia. He noted that even though the government knew of her religious beliefs, it had continued her employment and had paid her pension. The IJ ordered Gebregiorgis deported.
 
 
 6
 Gebregiorgis appealed the order to the BIA, which affirmed the deportation order on March 4, 1992. The BIA also took notice of the State Department's 1991 Country Report on Human Rights Practices in Ethiopia ("State Department Report") for the facts that the Ethiopian government had fallen in 1991 and that the new government had lifted the ban on Jehovah's Witnesses. Because of this change in government, the BIA decided that Gebregiorgis did not have a well-founded fear of religious persecution.
 
 
 7
 Gebregiorgis then filed a motion to reopen on April 3, 1992, claiming that the February 1992 arrest of her half-brother in Ethiopia for political crimes he had allegedly committed while an official in the old regime endangered her. Gebregiorgis explained that it is common in Ethiopia to punish relatives of people charged with political crimes and claimed that she feared persecution because of her half-brother's former political alliance and activities. Gebregiorgis also argued in the motion that the BIA improperly had taken notice of the change in the Ethiopian government. The BIA denied the motion because Gebregiorgis had failed to present a prima facie case for asylum.
 
 
 8
 Gebregiorgis appeals the BIA's dismissal of her appeal and denial of her motion to reopen.
 
 II
 
 9
 Gebregiorgis argues that the BIA abused its discretion when it took notice of the State Department Report. The BIA has the discretion to take administrative notice of facts not in evidence. Castillo-Villagra v. INS, 972 F.2d 1017, 1028 (9th Cir.1992). However, depending on the type of fact it notices, it may have to warn the petitioner of its intention to take notice or to allow for rebuttal evidence. Id. If the BIA should have warned the petitioner or allowed rebuttal, the denial of the petitioner's opportunity to be heard on the issue is a due process violation. Id. at 1029.
 
 
 10
 In Castillo-Villagra, we explained that to determine whether the BIA abused its discretion in taking administrative notice, a court may consider "whether the facts at issue are: (1) narrow and specific or broad and general; (2) central or peripheral; (3) readily accepted or controversial; (4) purely factual or mixed with judgment, policy or political preference; (5) readily provable or provable only with difficulty or not at all; or, (6) facts about the parties or facts ... unrelated to them." 972 F.2d at 1028 n. 5.
 
 
 11
 In Castillo-Villagra, the BIA had taken notice of the change of government in Nicaragua and had decided that this fact eliminated any basis for the petitioners' fear of persecution by the ousted Sandinistas. The reviewing court rejected this conclusion and held that although it was not debatable that the Sandinistas no longer controlled the government, it was possible that they retained enough power to persecute the petitioners. Id. at 1027. Therefore, the court concluded that the BIA erred in not providing the petitioners with an opportunity to rebut the noticed facts. Id. at 1029.
 
 
 12
 Here, the BIA took notice of the State Department Report to establish that the new Ethiopian government had lifted its predecessor's ban on the Jehovah's Witnesses and that the religion's adherents had held a public Bible study meeting. The BIA concluded from these facts that the petitioner did not have a well-founded fear of religious persecution. It did not inform Gebregiorgis that it was going to take notice of the report, nor did it allow her to present evidence showing that the changing political conditions in Ethiopia did not undermine the basis for her fear of religious persecution.
 
 
 13
 Applying the Castillo-Villagra factors, the fact that the new Ethiopian government had lifted a ban on Jehovah's Witnesses is specific, factual, and easy to prove. But the BIA's inference that this new policy removes any basis for the petitioner's fear of persecution is much more controversial, difficult to prove, and judgmental. As in Castillo-Villagra, the BIA used the noticed fact to reach a debatable and sweeping conclusion. Given a rebuttal opportunity, Gebregiorgis might have been able to produce evidence of continued persecution of Jehovah's Witnesses despite the government's ostensible policy of religious freedom. Because the new government's intentions and the real extent of religious freedom in Ethiopia are not easily determined facts, the BIA should have allowed Gebregiorgis to attempt to rebut the State Department Report.
 
 
 14
 The INS argues that even if the BIA abused its discretion by taking notice, the court should not reverse because the BIA did not base its decision solely on the noticed fact. Rather, the INS contends, the BIA based its dismissal on Gebregiorgis' failure to show a well-founded fear of persecution, making this case distinguishable from Castillo-Villagra where the noticed fact was the sole ground for the BIA's decision. 972 F.2d at 1031.
 
 
 15
 The INS's position is problematic because the BIA's order dismissing the appeal did not specifically state that Gebregiorgis' failure to show a well-founded fear was an independent ground for its decision. In Sarria-Sibaja v. INS, 990 F.2d 442 (9th Cir.1993), the BIA had taken notice of a change of government in Nicaragua without giving the petitioner warning and an opportunity to rebut the noticed fact. Id. at 444. The INS argued that since the BIA also had discussed specific reasons for dismissing the appeal, the BIA decision was not grounded solely on the improper administrative notice. This court rejected this reasoning and reversed, holding that since "the BIA did not explicitly state that the specifically enumerated reasons were an independent basis for its dismissal of [the] appeal," it could not "find that the specific reasons cited by the BIA are an independent basis for its decision." Id. (emphasis added).
 
 
 16
 Notably, the Sarria-Sibaja court distinguished its case from Castillo v. INS, 951 F.2d 1117 (9th Cir.1991), where this circuit upheld the BIA's dismissal of the appeal in spite of allegedly improper administrative notice. In Castillo, unlike in Sarria-Sibaja, the BIA explicitly had stated in its dismissal order that it had based its decision on "two distinct grounds, each of which is an independent basis for denial." 951 F.2d at 1120 (quoting BIA order).
 
 
 17
 Here, the BIA's initial order did not satisfy the explicit statement rule established in Sarria-Sibaja. After examining and rejecting Gebregiorgis' evidence, the BIA stated, "In addition, we take administrative notice of changed political conditions in Ethiopia since the respondent's hearing."[1] This language does not denote an independent ground for the BIA's decision. Sarria-Sibaja, 990 F.2d at 444. Although we might be able to infer from the BIA's opinion that its dismissal was based independently on Gebregiorgis' failure to establish a well-founded fear of persecution, Sarria-Sibaja requires a specific statement.
 
 
 18
 Subsequently, however, the BIA did make a sufficiently specific statement. In its later order denying Gebregiorgis' motion to reopen, the BIA stated that "we did not rely on the change in government as the sole basis for our finding that the respondent had not established a well-founded fear of persecution by the Government of Ethiopia. This was an alternative basis after we had already discussed the facts...." This comment satisfies Sarria-Sibaja 's specificity requirement because it explicitly states that the BIA had considered and had rejected the merits of Gebregiorgis' case independently from the change in government. Therefore, the BIA's failure to allow Gebregiorgis to present rebuttal evidence did not affect its decision that she had failed to show a well-founded fear of persecution.
 
 III
 
 19
 Gebregiorgis claims that the BIA abused its discretion in concluding that she did not have a well-founded fear of religious persecution. To qualify for asylum, a petitioner must have a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INS v. Cardoza-Fonseca, 480 U.S. 421, 427 (1987). The petitioner must make a "showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (quoting Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1985)) (emphasis in original).
 
 
 20
 To establish her fear of persecution if returned to Ethiopia, Gebregiorgis submitted declarations and human rights reports of the Ethiopian government's persecution of Jehovah's Witnesses. She also testified that she had been threatened with arrest for refusing to participate in political activities for religious reasons, had to practice her faith in secret, had to hide from government officials who wanted to make her participate in political activities, and had been told that she would be denied a funeral because of her religion.
 
 
 21
 The BIA, however, noted that Gebregiorgis had retained her government job and had retired on a government pension, even though she was open about her religious beliefs. Because this evidence discredits Gebregiorgis' testimony, she failed to meet her burden of presenting such evidence that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992). Therefore, the BIA did not abuse its discretion in dismissing her appeal.
 
 
 22
 Gebregiorgis also appeals the denial of her application for withholding of deportation. To be entitled to withholding of deportation, she must show a clear probability that she would be persecuted if she returned to Ethiopia. Acewicz, 984 F.2d at 1062. Because she has failed to demonstrate a well-founded fear of persecution, her evidence "does not meet the higher standard of a clear probability of persecution." Id.
 
 IV
 
 23
 Gebregiorgis further argues that the BIA erred in denying her motion to reconsider her application for asylum and withholding of deportation because new facts concerning her half-brother's participation in the overthrown regime support her fear of persecution. The BIA may deny a motion to reopen because, among other reasons, "the movant has not established a prima facie case for the underlying substantive relief sought." INS v. Abudu, 485 U.S. 94, 104 (1988). In deciding whether the motion, accompanying affidavits, and other evidentiary material establish a prima facie case, "the BIA must draw all reasonable inferences in favor of the alien unless the evidence presented is 'inherently unbelievable.' " Hernandez-Ortiz v. INS, 777 F.2d 509, 514 (9th Cir.1985). Although the BIA must accept the truth of the facts asserted to support a motion to reopen, the evidence must consist of specific facts, not conclusory statements. Agustin v. INS, 700 F.2d 564, 565 (9th Cir.1983).
 
 
 24
 In this case, Gebregiorgis has not provided specific facts to support her claim that her half-brother's alliance with the former Ethiopian government places her in danger of persecution if she returns to Ethiopia. The affidavits supporting her motion state simply that it is common for family members of political prisoners to be persecuted; they do not provide specific examples of this occurrence. In Shoaee v. INS, 704 F.2d 1079 (9th Cir.1983), the court held that a petitioner had not presented a prima facia case on a motion to reopen when he had claimed that his family was closely connected with the deposed Shah of Iran, because his fears were " 'mainly related to actions taken against his father,' not to persecution directed at [the petitioner] himself." Id. at 1084 (quoting the BIA opinion). Similarly, Gebregiorgis' claims are related to the potential persecution that her half-brother faces, not to an established threat to her own safety. She, in fact, acknowledges that she had no contact with her half-brother while he was part of the former regime, nor did she participate in that government's politics. Since Gebregiorgis has failed to advance specific facts supporting a prima facie case of a well-founded fear of persecution, the BIA did not abuse its discretion in denying her motion to reopen.
 
 V
 
 25
 We affirm the BIA's dismissal of Gebregiorgis' appeal and its denial of her motion to reopen.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This statement distinguishes the instant case from Acewicz v. INS, 984 F.2d 1056, 1060-61 (9th Cir.1993), in which the court denied a petition for review because the petitioners had had the opportunity to present evidence to rebut the administrative notice of a change of government. Here, since the BIA took notice after Gebregiorgis' hearing, she did not have the opportunity afforded the petitioners in Acewicz