**Nidia GUTIERREZ–ROGUE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 91–1130.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 3, 1992.

Decided Feb. 4, 1992.

---

Donald L. Schlemmer, for petitioner.

Francesco Isgro, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Richard M. Evans, Asst. Director, Office of Immigration Litigation, Dept. of Justice, were on the brief, for respondent. David J. Kline also entered an appearance for respondent.

Before WALD, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Nidia Gutierrez–Rogue de Picado, a citizen of Nicaragua, entered the United States illegally on September 28, 1984. Upon being apprehended by officials of the Immigration and Naturalization Service, she applied for asylum or, alternatively, for withholding of deportation, claiming that she would be persecuted if returned to Nicaragua. The Board of Immigration Appeals denied her application and ordered her deported, reasoning that her fear of persecution was not well-founded in light of the fall of the Sandinista government of Nicaragua. Gutierrez now petitions this court for review of that decision. Finding no error in the Board's decision, we deny her petition for review.

## I. BACKGROUND

At her hearing before an Immigration Judge, Gutierrez presented the following evidence. Before the 1979 Sandinista revolution in Nicaragua, she was a high school teacher and her husband was an Air Force sergeant. After the revolution, the Sandinistas arrested her husband. To secure his release, Gutierrez agreed to spend one year studying Marxism and teaching in Cuba. When she returned to Nicaragua, the Ministry of Education asked her to go back to Cuba for two or more additional years; she refused, and the Ministry (apparently in retaliation) assigned her to a school so far from her home that she was gone from 6 a.m. until 10 p.m. each day.

Gutierrez also refused to join the neighborhood Sandinista Defense Committee. In 1981, her husband fled Nicaragua, going first to Panama and later joining the "Contras" in Costa Rica. Her food rationing card was then taken away and she began to receive weekly visits from security officers trying to find her husband. Later, she received a death threat from the "divine mobs," a civilian gang supporting the Sandinista Defense Committee.

In August 1984, the Sandinista government ordered citizens to dig trenches in order to defend the country against a supposed invasion by the United States. Gutierrez refused, was threatened with jail, and then relented. Later that same month, the assistant director of the school at which Gutierrez was teaching informed her that the director had sent a letter to the Ministry of Education and to the State Security agency accusing Gutierrez of distorting the political message of the Sandinistas and of encouraging counter-revolution. The assistant director warned Gutierrez that if she remained in Nicaragua, "something grave" would happen to her. Gutierrez secured forged travel papers and left Nicaragua in September 1984.

At the hearing before the IJ, Gutierrez was asked whether she could safely return to Nicaragua. She replied, "I would like to go back to Nicaragua, but under a new regime."

The IJ denied Gutierrez's request for asylum and for withholding of deportation, *In re Gutierrez*, No. A26–954–889 (IJ Nov. 18, 1987), and Gutierrez appealed to the BIA. Two-and-a-half years later, while her appeal was still pending, the people of Nicaragua voted the Sandinistas out of office; Violeta de Chamorro, leader of the anti-Sandinista coalition, was inaugurated as president on April 25, 1990. Five months after that, the BIA dismissed Gutierrez's appeal.

The Board's decision was based in large part upon the change in the government of Nicaragua, of which it took official notice. According to the BIA, Gutierrez's

> asylum and withholding [of deportation] claims are based on a fear of harm from the Sandinistas, who controlled the government at the time she departed Nicaragua.... Given that the Sandinista party no longer governs Nicaragua, under the present circumstances we do not find that the record now before us supports a finding that [Gutierrez] has a well-founded fear of persecution by the Sandinista government were [s]he to return to Nicaragua.

*In re Gutierrez*, No. A26–954–889, at 1–2 (BIA Oct. 1, 1990). In petitioning for review, Gutierrez maintains that despite the change of government, she still has a well-founded fear of persecution by the Sandinistas.

## II. ANALYSIS

Gutierrez seeks either asylum or withholding of deportation under the Immigration and Nationality Act (INA), §§ 208(a) and 243(h) respectively, 8 U.S.C. §§ 1158(a) and 1253(h). An alien who has suffered past persecution or who has a "well-founded fear" of being persecuted in the future is eligible for asylum, INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), but the decision whether to grant asylum is within the discretion of the Attorney General, INA § 208(a), 8 U.S.C. § 1158(a); *see INS v. Cardoza–Fonseca*, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987); *see also Matter of Chen*, 20 I. & N. Dec. ___, slip op. at 5 (BIA Int. Dec. No.

3104, Apr. 25, 1989) (alien who suffers "atrocious forms of [past] persecution" eligible for asylum even without well-founded fear of future persecution and may be entitled to a "favorable exercise of [the Attorney General's] discretion ... for humanitarian reasons"); *cf.* 8 C.F.R. § 208.13(b)(1) (governing "past persecution" asylum claims filed on or after October 1, 1990). An alien who meets a higher standard, showing that "it is more likely than not that [she] would be subject to persecution" if returned to her home country, has a right to withholding of deportation, *INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984), even if the Attorney General exercises his discretion to deny her asylum.

■ In her brief, Gutierrez makes essentially four arguments in support of her claim for relief from deportation. *First*, she assigns various errors to the decision of the IJ. These are irrelevant, however. The BIA based its decision upon a ground entirely different than did the IJ, and it is the BIA's decision that we review. *See Kubon v. INS*, 913 F.2d 386, 387 (7th Cir. 1990); *Rodriguez–Rivera v. INS*, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam); *Kabongo v. INS*, 837 F.2d 753, 756 (6th Cir. 1988).

■ *Second*, Gutierrez argues that the BIA erred in rejecting her claim to have a well-founded fear of persecution or, in the alternative, that it is more likely than not that she will be persecuted if she returns to Nicaragua. Whether an alien has a well-founded fear of persecution is a question of fact, and we review the Board's determination only for substantial evidence. *See* INA § 106(a)(4), 8 U.S.C. § 1105a(a)(4); *Wing Ding Chan v. INS*, 631 F.2d 978, 981 (D.C.Cir.1980); *Hamad v. INS*, 420 F.2d 645, 646 (D.C.Cir.1969). The nature of the change of government in Nicaragua is substantial evidence that Gutierrez does not have a well-founded fear of persecution and is thus not eligible for asylum upon that ground. Because eligibility for withholding of deportation requires a greater showing of probable persecution, *see Cardoza–Fonseca*, 480 U.S. at 449–50, 107 S.Ct. at 1222; *Stevic*, 467 U.S. at 425, 104

S.Ct. at 2498, it necessarily follows that she is not entitled to that form of relief either. *See Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir.1991); *Kapcia v. INS*, 944 F.2d 702, 709 (10th Cir.1991); *Rojas v. INS*, 937 F.2d 186, 190 (5th Cir.1991) (per curiam); *Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir.1991).

■ *Third*, Gutierrez claims that she is eligible for asylum based upon past persecution. The BIA assumed, *arguendo*, that the Sandinistas persecuted Gutierrez, but it denied her application as a matter of discretion. We review this aspect of the Board's decision, accordingly, for abuse of discretion. *See Wing Ding Chan*, 631 F.2d at 981; *Hamad*, 420 F.2d at 647.

Gutierrez argues that she is entitled to a favorable exercise of the discretion because of the severity of the persecution she suffered, citing *Matter of Chen, supra*, slip op. at 5–8. In that case, the asylum applicant was the son of a Christian minister in China who was imprisoned and tortured during the Cultural Revolution. Their home was ransacked. At the age of 8, the applicant was locked in a room with his grandmother for six months and was frequently beaten.

> [He] fell asleep during a speech regarding the need to criticize one's parents. Rocks were thrown at him. They struck his head and he suffered a serious loss of blood. His injuries required a month of intensive treatment....

He suffered a permanent hearing loss and throughout the rest of the Cultural Revolution continued to suffer debilitating physical and mental persecution. Slip op. at 6–7. The harassment that Gutierrez suffered, although no doubt very frightening, was not nearly so severe. Thus, the BIA did not abuse its discretion by denying Gutierrez asylum after having granted it to Chen.

■ *Fourth*, Gutierrez claims that she was denied due process because the BIA took official notice of the change of government in Nicaragua without giving her an opportunity to contest the significance of that fact. She does not argue that the officially noticed fact is false; rather, she contends that the change of government is of limited probative value to her application because the Sandinistas retain sufficient

control over the police and the army of Nicaragua to persecute her.

It is clearly established in this circuit that although "[t]here is no constitutional right to political asylum itself,"

> an alien who has unlawfully entered the United States has a Fifth Amendment procedural due process right to petition the government for political asylum and a statutory procedural due process right [to a "meaningful or fair evidentiary hearing."]

*Maldonado–Perez v. INS,* 865 F.2d 328, 332–33 (D.C.Cir.1989) (citation omitted); *cf. Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotation marks omitted). It follows that the BIA may not use its undoubted authority to take official notice of a change in a government abroad, *see, e.g., Rivera–Cruz v. INS,* 948 F.2d 962, 966 (5th Cir.1991); *Janusiak,* 947 F.2d at 48 & n. 1; *Kapcia,* 944 F.2d at 705; *Kubon,* 913 F.2d at 388, in such a way as to deny an applicant for asylum her due process right to a meaningful hearing. *See Kaczmarczyk v. INS,* 933 F.2d 588, 594 (7th Cir.1991). Neither the INA nor the INS regulation implementing it expressly provides the alien with an opportunity to challenge an officially noticed fact. Because a hearing is not truly meaningful if a critical issue is effectively excluded from consideration, however, Gutierrez appears to be correct in arguing that due process guarantees an asylum applicant the right to challenge an officially noticed fact—with respect both to its truth and its significance. *See Rivera–Cruz,* 948 F.2d at 968; *Kaczmarczyk,* 933 F.2d at 596.

Gutierrez's due process claim is premature, however; she has not yet been finally deprived of the right to challenge the fact of which the BIA took official notice. Under INS regulations, an alien whose application for asylum and withholding of deportation has been rejected by the BIA may petition the Board to reopen her case based upon evidence that is "material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2. This reopening procedure "provides asylum applicants with an opportunity to present the [BIA] with evidence that the facts it officially noticed are incorrect or that they are true but irrelevant to their case." *Kaczmarczyk,* 933 F.2d at 597; *see also Rivera–Cruz,* 948 F.2d at 968.

At oral argument here, the Government conceded that Gutierrez could challenge the significance of the officially noticed fact in a petition to reopen; we note also that an adverse decision would be subject to review in this court, *see INS v. Abudu,* 485 U.S. 94, 96, 108 S.Ct. 904, 907, 99 L.Ed.2d 90 (1988). The availability of the petition to reopen secures Gutierrez's due process right to a meaningful hearing. *See Rivera–Cruz,* 948 F.2d at 968; *Kaczmarczyk,* 933 F.2d at 597; *cf. Opp Cotton Mills v. Administrator of the Wage and Hour Div. of the Dep't of Labor,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 536, 85 L.Ed. 624 ("The demands of due process do not require a hearing at the initial stage or at any particular point ... in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective").

Although a petition to reopen does not automatically stay a deportation order, *see* 8 C.F.R. § 3.8(a), a significant due process concern would be raised if the INS were to deport an alien prior to the final resolution of her (non-frivolous) challenge to a fact officially noticed by the Board. Like the Seventh Circuit, therefore, "[w]e presume that when an asylum applicant uses a good faith motion to reopen to dispute officially noticed facts, the Board will exercise its discretion to stay the execution of its decision until it has had an opportunity to rule on the applicant's motion." *Kaczmarczyk,* 933 F.2d at 597 n. 9.

### III. CONCLUSION

For the foregoing reasons, Gutierrez's petition for review is

*Denied.*