**Herbert Edmundo GOMEZ–VIGIL and Silvia Auxiladora Hernandez de Gomez, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 91–70004.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1993.

Decided March 26, 1993.

---

Walter Rafael Pineda, San Francisco, CA, for petitioners.

Stewart Deutsch, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: ALDISERT,* GOODWIN, and FLETCHER, Circuit Judges.

PER CURIAM:

In *Castillo–Villagra v. INS*, 972 F.2d 1017 (9th Cir.1992), a Nicaraguan national

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

and her two daughters appealed to the Board of Immigration Appeals an adverse decision of an immigration judge who had denied the aliens' request for asylum or withholding of deportation. The aliens contended that they would be persecuted because of their stated anti-Sandinista sentiments were they to return to their homeland. In denying their appeal, the Board took administrative notice "that the Sandinista Party no longer governs Nicaragua." The Board did not give prior notification of its taking notice of the Nicaragua government change. We granted the petition for review and held that the failure to give such notification constituted a denial of due process. *Castillo–Villagra* controls the outcome of the present petition for review by Herbert Edmundo Gomez–Vigil and his wife, Silvia Auxiladora Hernandez de Gomez.

Petitioners, also citizens of Nicaragua, entered the United States illegally on April 14, 1985. Upon being apprehended by officials of the Immigration and Naturalization Service, they applied for asylum or, alternatively, for withholding of deportation, contending that they would be persecuted if returned to Nicaragua. The Board of Immigration Appeals denied their applications and ordered them deported, reasoning that their fear of persecution was not well-founded in light of the fall of the Sandinista government of Nicaragua. As in *Castillo–Villagra*, the Board applied the doctrine of administrative notice and found as a fact that the Sandinista Party no longer governs Nicaragua. The husband and wife now petition this court for review of that decision. Under *Castillo–Villagra*, we are required to grant the petition for review.

### I.

At the hearing before the immigration judge, petitioners presented the following evidence: Gomez–Vigil was born in 1925, and beginning in 1977 he participated in political activities against the administration of the former dictator, Anastasio Somoza. While a student in Managua, he became an active member of the "Revolutionary Student Force," which became the FSLN (Frente Sandinista de Liberacion Nacional). When the Sandinistas took control in July 1979, Gomez was one of the founders of the Sandinista Defense Committee (CDS) in the Rio San Juan Department and was subsequently elected to public office, becoming a full member of the Sandinista Council for his region. He earned a degree in veterinary and zoo technology and went to work for MIDRINA (Ministry for Agricultural and Live Stock Development), teaching animal husbandry and political ideology to peasants and forming land cooperatives.

By 1983, he became disillusioned with the regime, resigned his position, refused to have further associations with the Sandinistas and opened a private import business. After his resignation, petitioner was hampered by government officials who accused him of becoming a "capitalist exploiter." His wife was intimidated by an official who threatened to confiscate their home and business. She testified that persons in a neighboring town had been murdered for not complying with similar demands. Both petitioners fear that if returned to Nicaragua, they would be persecuted by the Sandinistas as traitors.

### II.

The immigration judge denied petitioners' request for asylum and for withholding of deportation, and they appealed to the Board. While the appeal was still pending, Violeta Chamorro, leader of the anti-Sandinista coalition, was elected president and inaugurated on April 25, 1990. Subsequently, the Board dismissed the appeal.

The Board's decision was based upon the change in the government of Nicaragua, of which it took official notice:

[W]e take administrative notice that the Sandinista Party no longer controls the Nicaraguan government. Effective April 25, 1990, a new coalition government, formed by parties in opposition to the Sandinistas ("UNO"), has succeeded the former government of the Sandinista Party following national elections and the inauguration of Violeta Chamorro as the new president. Further, the new

president of Nicaragua has announced a general amnesty covering the hostilities between the former Contra resistance and the Nicaraguan government and an end to military conscription. Given that the Sandinista party no longer governs Nicaragua, under the present circumstances we do not find that the record now before us supports a finding that the respondents have a well-founded fear of persecution by the Sandinista government were they to return to Nicaragua. BIA Op. at 2, *reprinted in* A.R. at 11 (footnotes omitted). *Cf. Castillo–Villagra*, 972 F.2d at 1021 ("[t]he BIA issued its decision ... based entirely on the election results").

In petitioning for review, the husband and wife contend that, notwithstanding the change of government, they still have a well-founded fear of persecution by Sandinistas who remain active in the country. They argue that the Board improperly took administrative notice of the change of government and that the Board issued a form-letter denial of their petition without any review of the merits of their cases. On the merits, they contend that they are entitled to asylum or withholding of deportation based on past persecution and on fear of future persecution. Pet. Br. at 1–2.

The Board's order was dated September 28, 1990. On January 4, 1991, a timely petition for review was filed. 8 U.S.C. § 1105a(a)(1) (Prior to January 1, 1991 the limitation period for filing petitions for review was six months; for petitions filed thereafter, the limitations period is 90 days). Accordingly, we have jurisdiction.

### III.

Before addressing the specific questions raised by petitioners, we note that as a court reviewing a final order of an administrative agency we are not permitted to consider evidence that was not before the immigration judge or the Board. We are not permitted to consider evidence that is not part of the administrative record. *See*

8 U.S.C. § 1105a(a)(4) (With a stated exception not applicable here, "the petition shall be determined solely on the administrative record upon which the deportation order is based"); *see also Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir.1980) ("[I]t is an established principle that this court does not sit as an administrative agency for the purpose of fact-finding in the first instance ..."), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982).

Accordingly, we must reject petitioners' implied request that we consider news articles and other materials appended to the briefs that were not part of the administrative record. *Accord Rhoa–Zamora v. INS*, 971 F.2d 26, 34 (7th Cir.1992); *Rivera Cruz v. INS*, 948 F.2d 962, 967 (5th Cir.1992).[1]

### IV.

#### A.

Petitioners argue that the Board's "form-letter denial" failed to review the merits of their case and thus denied them due process. They state, "[i]n the instant case the BIA's decision does not make any review of the facts underlying petitioners' applications for asylum." Pet. Br. at 8. We note that the Board must conduct "an individualized review of the petitioner's contentions and circumstances." *Castillo v. INS*, 951 F.2d 1117, 1121 (9th Cir.1991). However, we need not decide whether or not the Board adequately considered the facts presented, because we base our decision on petitioner's alternative due process argument, which concerns the Board's taking administrative notice.

#### B.

Petitioners claim that they were denied due process because the Board took official notice of the change of government in Nicaragua without giving them an opportunity to contest the significance of the fact.

Our review of the Board's decision is governed by *Castillo–Villagra v. INS*, 972

---

**1.** Subsequent to the BIA's review of this case, Silvia Auxiladora Hernandez de Gomez' parents were granted asylum. Petitioners contend that this action is relevant to their own claims to asylum. Since it is not in the current record, we do not consider the claim at this time.

F.2d 1017, 1029 (9th Cir.1992), which held that the BIA "erred in taking notice of the change of government without providing the petitioners an opportunity to rebut the noticed facts." We explicitly rejected the position that due process requirements are satisfied by the petitioner's right, under 8 C.F.R. §§ 3.2 & 3.8,[2] to move the BIA to reopen the proceedings and present evidence to rebut the noticed facts. *Id.* Here, as in *Castillo–Villagra,* petitioners did not receive warning that administrative notice would be taken. Nor were they provided with an opportunity to contest or rebut by further evidence the facts of which administrative notice was taken. *Id.* at 1021.

Because the BIA improperly took administrative notice in this case, we must vacate its decision and remand. *Castillo–Villagra,* 972 F.2d at 1029. For the purposes of this appeal, we do not pass on the sufficiency of the evidence adduced by petitioners in support of their requests for asylum and withholding of deportation. We reserve judgment on these issues until the Board affords petitioners an opportunity to show cause why administrative notice should not be taken or to supplement the record in order to rebut noticed facts, in full compliance with rights assured by the due process clause of the Fifth Amendment.

The petition for review is GRANTED.

ALDISERT, Circuit Judge, concurring:

I join in the panel's opinion only because I am obligated to follow the panel opinion in *Castillo–Villagra v. INS,* 972 F.2d 1017 (9th Cir.1992).

I write separately to make clear that I believe that the Due Process question in *Castillo–Villagra* is one of exceptional importance and that the panel's decision is in tension with or squarely conflicts with decisions of eight other courts of appeals, rep-

resenting every other court that has considered this issue. I believe that, as a matter of procedure, the decision runs counter to the Federal Rules of Evidence and that, as a matter of constitutional law, the question was wrongly decided.

Reduced to its essence, *Castillo–Villagra* holds that prior notification to the petitioners that the Board was taking administrative notice of a government change in Nicaragua was an absolute—an absolute mandated by the Constitution—and that the Board's failure to give prior notification violated the Due Process Clause. This draconian extension of orthodox Due Process teachings stemmed from the view that the Board's discretionary power to grant or deny a stay of deportation affords the petitioners no protection from deportation pending a motion to reopen the proceedings to present competent rebuttal evidence.

I agree that denying an opportunity to present rebuttal evidence would amount to a Due Process deprivation, but I believe that the petitioners are protected from any action to deport them pending the motion for reopening, because the district court would have habeas jurisdiction as exemplified by Judge Fletcher's opinion for the court in *Dhangu v. INS,* 812 F.2d 455 (9th Cir.1987). Accordingly, I believe that the *Castillo–Villagra* panel pushed Due Process teachings beyond permissible limits, determining prematurely that a constitutional deprivation has taken place; the petitioners have not been prevented from presenting rebuttal evidence before the Board, and until that denial takes place, there is no Due Process deprivation.

The holding conflicts with decisions of the Courts of Appeals of the Fourth, Fifth, Seventh and District of Columbia Circuits involving administrative notice of the Nicaraguan government change, and with decisions of the First, Third, Seventh, Eighth

---

**2.** 8 C.F.R. § 3.2 provides in part that—

Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing....

8 C.F.R. § 3.8(a) provides in part that—

Motions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material. Motions to reconsider shall state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent.

and Tenth circuits involving notice of government changes in Poland and Hungary.

For the purposes of my discussion I concede that there are factual differences in the change of government in Nicaragua on the one hand and in Poland and Hungary on the other hand. Solely for the purpose of conceding there is a difference in the Nicaragua cases, I will take *judicial* notice of the existence of accounts in leading newspapers stating that former Sandinistas control the Nicaraguan army and police forces.[1]

It is very significant to me that, of the nine courts of appeals that have considered the use of administrative notice by the Board of Immigration Appeals to record a government change, only this court has found a Due Process deprivation.

Also significantly, the *Castillo–Villagra* opinion, decided July 27, 1992, failed to analyze the reasoning of our sister circuits that previously reached a contrary result in Nicaragua cases, viz., *Chavez–Robles v. INS*, 966 F.2d 1441 (4th Cir.1992) (unpublished opinion); *Gutierrez–Rogue v. INS*, 954 F.2d 769 (D.C.Cir.1992); *Rivera–Cruz v. INS*, 948 F.2d 962 (5th Cir.1991), *reh'g denied*, 954 F.2d 723 (5th Cir.1992) (table).

## I.

The panel's decision runs counter to the spirit, if not the letter, of Evidence Rule 201(e), which contains an explicit provision allowing rebuttal *after* judicial notice has been taken. To be sure, I recognize that this rule relates to judicial notice and not administrative notice, but to me this is a distinction without a difference. Rule 201(e) specifically provides that if judicial notice is taken of a fact, "[i]n the absence of prior notification, the request [to be heard as to the propriety of taking notice] may be made *after* judicial notice has been taken." (My emphasis). A court may take judicial notice of facts without prior notification to the parties, so long as the court subsequently provides an opportunity to rebut the noticed facts, and I have not been directed to any reasoning suggesting that

another rule, prudential or constitutional, should be imposed on administrative agencies. Nothing in the *Castillo–Villagra* opinion addresses this conflict with Rule 201(e).

## II.

I now turn to the *Castillo–Villagra* Due Process holding. Preliminarily, I emphasize those portions of the opinion with which I am in total agreement:

- There is no quarrel with the Board's taking notice that Violeta Chamorro had been elected president of Nicaragua, and that UNO, a non-Sandinista coalition, had won a majority in parliament. 972 F.2d at 1025.
- The question should be analyzed under the Immigration and Nationality Act and not the Administrative Procedure Act, 5 U.S.C. §§ 551–706. *Id.* at 1026 (citing *Ardestani v. INS*, — U.S. —, —, 112 S.Ct. 515, 518, 116 L.Ed.2d 496 (1991)).
- Taking notice of the government change is an adjudicative fact. A broader notice of adjudicative facts is available in administrative hearings than in judicial proceedings. *Id.* 972 F.2d at 1026–27.
- Such a rule of convenience is especially justified in INS cases, because "[i]ts officers work in a specialized area with many similar cases, so they grow familiar with conditions abroad from many witnesses and exhibits. The burden of producing evidence may be especially great when it involves changing political conditions in a foreign country. The repetitiveness of such evidence, as large numbers of petitioners from particular countries pass through the system, may interfere with its heuristic power." *Id.* at 1028.

My quarrel is only with the panel's interpretation of the Due Process Clause. Before addressing this, however, it is well to understand (a) the procedures for reopening Board proceedings, and (b) the regula-

---

1. *Just–Published Law Strengthens Sandinista Military*, S.F. Chron., Sept. 18, 1990, at ——, *reprinted in* Petr. Br. app.; *Managua Seeks Quick Answer in Death*, N.Y. Times, Feb. 18, 1991, at 3, *reprinted in id.*

tory and statutory provisions governing stays of deportation.

### A.

Neither the Immigration and Nationality Act nor the INS regulations implementing it expressly provides the alien with an opportunity to challenge an officially noticed fact. I believe, however, that the Due Process Clause requires that this opportunity be provided, because a hearing is not truly meaningful if a critical issue is effectively excluded from consideration. I believe that Due Process grants these petitioners the right to challenge an officially noticed fact, to challenge with respect both to its truth and its significance. See *Rivera–Cruz*, 948 F.2d at 968; *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991). I am satisfied, however, that INS regulations do provide this opportunity.

An alien whose application for asylum and withholding of deportation has been rejected by the Board may petition the Board to reopen his or her case based upon new evidence.

8 C.F.R. § 3.2 provides in part:

Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. . . .

8 C.F.R. 3.8(a) provides in part:

Motions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material. Motions to reconsider shall state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent.

These procedures "provide[ ] asylum applicants with an opportunity to present the [Board] with evidence that the facts it officially noticed are incorrect or that they are true but irrelevant to their case." *Kaczmarczyk*, 933 F.2d at 597; *see also Rivera–Cruz*, 948 F.2d at 968.

### B.

Proceedings in these cases usually begin with a deportation order issued by an INS district director. The alien then has several options. He or she may file an initial application for asylum or withholding of deportation or both with the INS Asylum Office by mail, 8 C.F.R. § 208.4(a), with the district director, § 208.4(b), or with an immigration judge, § 208.4(c). Also typically for our purposes, deportation is stayed pending an appeal to the Board from the immigration judge's denial of asylum or withholding of deportation. 8 C.F.R. §§ 3.6 and 243.4.

The deportation decision of the Board is a final order, 8 C.F.R. § 3.1(d)(2), which may be judicially reviewed by this court. 8 U.S.C. § 1105a. The next stay goes into effect by operation of the Immigration and Nationality Act when a petition for review of the Board's order is filed and then served on the INS. 8 U.S.C. § 1105a(a)(3). When the court of appeals grants the petition for review, the court's action has two principal effects: It dislodges the statutory stay and reinstates the stay that was in effect during the Board's consideration of the appeal; it also nullifies the Board's final order and, in ordinary circumstances, reinstates the proceedings before the Board. When the court denies the petition for review, the statutory stay terminates.

I think the *Castillo–Villagra* panel recognized all this but expressed the fear that the petitioners were now at the exclusive mercy of the Board, which could execute or stay deportation during consideration of the motion to reopen. 8 C.F.R. § 3.8(a). The panel further observed that the court of appeals in *Kaczmarczyk* presumed that the Board would exercise its discretion to stay deportation until it had ruled on the motion, but the panel concluded:

We are not satisfied that we can make this presumption, in view of the "broad discretion" the agency has to deny motions for rehearing, which are "disfavored." *INS v. Doherty*, —— U.S. ——,

——, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992).

972 F.2d at 1030.

Thus, what concerned the *Castillo–Villagra* panel was the lack of assurance that the INS would continue to stay deportation pending the presentation by the petitioners and consideration by the Board of evidence rebutting those facts that had been administratively noticed. It was this lack of a guaranteed stay pending reopening that led the court to depart from our sister circuits.

### III.

What the *Castillo–Villagra* panel failed to recognize is that upon the return to the Board the petitioners are not at the complete mercy of the Board when it comes to the sensitive question of deportation. The petitioners have a federal court remedy to afford immediate, round-the-clock protection against any INS action that might implement deportation proceedings before a Due Process right has been vindicated. It is a federal court remedy that would be available as soon as a Due Process claim did in fact ripen.

In particular, the *Castillo–Villagra* panel failed to consider the strong line of cases of this court explaining that the district court has jurisdiction to review a district director's, an immigration judge's or the Board's interim discretionary decision to deny a stay of deportation. These cases are exemplified by Judge Fletcher's opinion for the court in *Dhangu v. INS*, 812 F.2d 455, 459 (9th Cir.1987) (citing *Williams v. INS*, 795 F.2d 738, 742 (9th Cir.1986); *Kemper v. INS*, 705 F.2d 1150, 1150 (9th Cir.1983); *Sotelo Mondragon v. Ilchert*, 653 F.2d 1254, 1256 (9th Cir.1980)). Thus, the petitioners will not be placed in limbo. The petitioners will not be at the sole mercy of any discretionary stay order by the immigration service. Federal courthouse doors will be open to them.

### A.

The Due Process Clause can be vindicated by the Board's consideration of new evidence in a motion to reopen, and if the Board denies the opportunity to present such evidence, a Due Process violation then occurs. *Cf. Gutierrez*, 954 F.2d at 773; *Rivera–Cruz*, 948 F.2d at 968–69; *Kaczmarczyk*, 933 F.2d at 597 & n. 9. It occurs because, in accordance with the Fifth Amendment, the petitioner will be "deprived of life, liberty, or property, without Due Process of law." The key word is "deprived." For our purposes, the petitioner cannot be deprived until or unless he or she is denied the opportunity to present competent rebuttal evidence.

The petitioners here, as in *Castillo–Villagra*, have not yet made such a request to the Board. No Board has denied them this opportunity. Therefore, no Due Process violation has taken place.

It is precisely at this point where the *Castillo–Villagra* panel went astray. It found a deprivation when no deprivation existed. And no court, federal or state, high or low, may properly find a Due Process violation unless it first finds that someone has been "deprived."

Nor is it a proper analogy to suggest that the taking of administrative notice by the Board is tantamount to a district court's dismissal of an action for failure to state a claim under Rule 12(b)(6), Fed. R.Civ.P. This argument confuses the fundamental, if not rudimentary, distinction between issues of fact and law. The administratively noticed fact may be refuted by presenting competent rebuttal evidence, whether in the same hearing or in a subsequent motion to reopen under 8 C.F.R. § 3.2. In a Rule 12(b)(6) disposition, however, all facts are assumed to be true, but insufficient as a matter of law.

An argument based on the dismissal-of-a-claim analogy may succeed only if one makes a further assumption—which I refuse to make—that a petitioner is not permitted to rebut the noticed fact in a Section 3.2 hearing. The regulation provides that the motion shall not be granted unless the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."

Obviously, the evidence of the Sandinistas' continued power is material, but it was not available or presented to the Board in this case, because of the chronology of events. The appeal petition to the Board was filed July 2, 1986, and the petitioners filed their brief November 1, 1987. No hearing was requested by the petitioners for the reception of additional evidence. The Board held the appeal in abeyance for almost three years, and in the meanwhile, the Chamorro government came to power on April 25, 1990. The Board affirmed the immigration judge's decision on September 28, 1990.

Moreover, the very nature of the rebuttal information—that subsequent to the Board's decision in 1990, the Sandinistas continued to control the Nicaraguan police and army—is evidence that "was not available and could not have been discovered or presented at the former hearing." The very nature of the present contention, to be sure, a most compelling, effective and formidable one, is that today, in 1993, the Sandinistas still control the police and military, *see supra* note 1, and the petitioners have a justified fear of persecution. In my view, not only may this rebuttal evidence be presented at a Section 3.2 hearing, but a refusal of the Board to consider it would be the action that triggers a Due Process deprivation.

### B.

But I can understand what motivated the *Castillo–Villagra* panel to stretch orthodox Due Process teachings. It was classic result-oriented jurisprudence designed to protect the petitioners from deportation during the period when the Board would consider competent evidence to rebut the administratively noticed facts.

Such a motivation is admirable, especially in view of the tragic circumstances to which many petitioners appearing before this court were exposed during the period of the Sandinista dictatorship. But in the law, the desired result must be both principled and congruent with and not antagonistic to valid and binding rules of the system. Professor Kent Greenawalt reminds us:

> Judges must decide all the issues in a case on the basis of general principles that have legal relevance; the principles must be the ones the judges would be willing to apply to the other situations that they reach; and the opinion justifying the decision should contain a full statement of those principles.[2]

Similarly, Professor Herbert Wechsler taught judges that "A decision may, in short, be wholly principled and wrong.... [I]t cannot be unprincipled and right."[3]

To be sure, this is valuable advice for all phases of appellate adjudication, but it is especially important in matters of constitutional law. In these cases, our watchwords must always be those of Chief Justice Marshall: "In considering this question, then, we must never forget that it is a constitution we are expounding."[4]

Adherence to the tenet of consistency keeps the march of the law at a measured cadence. The point riders can go just so far; the outriders must keep close to the flanks; and the drags must not fall too far behind. In deciding questions of constitutional law, no matter how noble our motivation or lofty the desired consequence, our decisions must not be inconsistent with established rules. Point riders, outriders and drags must not drift too far away from those legal precepts that are theirs to protect.

In *Castillo–Villagra*, the panel cast tenets of consistency and coherence aside in inventing a new meaning for Due Process deprivation, a meaning that is both unprincipled and inconsistent with established Due Process Clause teachings.

**2.** Kent Greenawalt, *The Enduring Significance of Neutral Principles,* 78 Colum.L.Rev. 982, 990 (1978).

**3.** Herbert Wechsler, Toward Neutral Principles: Revisited, Remarks at Conference of Federal Appellate Judges, Federal Judicial Center (March 12, 1975), *reprinted in* Ruggero J. Aldisert, *The Judicial Process: Readings, Materials and Cases* 543, 545 (1976).

**4.** *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819).

Here, too, even if the panel's analysis had been congruent with principled precepts, the panel failed to recognize the interplay of habeas jurisdiction in the federal district courts in INS cases, *see Dhangu,* 812 F.2d 455, and the ripening of a Due Process deprivation claim if the INS attempted to deport precipitously without providing the petitioners with an opportunity to move for reopening. A denial of the discretionary stay could prevent the petitioners from making such a presentation. 8 C.F.R. § 3.2 ("A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States"). This denial would be the Due Process deprivation that would immediately vest jurisdiction in the district court through habeas review. *Dhangu,* 812 F.2d at 459.[5]

Alternatively, if the refusal of a discretionary stay is considered "incident" to proceedings on a motion to reopen properly before this court, the denial of a discretionary stay can be reviewed by this court. *Id.* at 459 n. 6 (citing *Reyes v. INS,* 571 F.2d 505 (9th Cir.1978)).

### C.

Thus, in my view, the *Castillo–Villagra* panel jumped the gun. It found a Due Process violation even though the petitioners in that case, as in the one before us, were not finally deprived of an opportunity to rebut the noticed facts.

Although "[t]here is no constitutional right to political asylum itself," it is established that—

an alien who has unlawfully entered the United States has a Fifth Amendment procedural Due Process right to petition the government for political asylum and a statutory procedural Due Process right [to a "meaningful or fair evidentiary hearing."]

*Maldonado–Perez v. INS,* 865 F.2d 328, 332–33 (D.C.Cir.1989) (citation omitted); cf. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of Due Process is the opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotation marks omitted). It follows that the Board may not use its undoubted authority to take official notice of a change in a government abroad, *see, e.g., Rivera–Cruz v. INS,* 948 F.2d 962, 966 (5th Cir.1991); *Janusiak v. INS,* 947 F.2d 46, 48 & n. 1 (3d Cir.1991); *Kapcia v. INS,* 944 F.2d 702, 705 (10th Cir.1991); *Kubon v. INS,* 913 F.2d 386, 388 (7th Cir.1990), in such a way as to deny an applicant for asylum her Due Process right to a meaningful hearing. *Kaczmarczyk v. INS,* 933 F.2d 588, 594 (7th Cir.1991).

I would hold that the Board's taking notice of the change of Nicaraguan government accords with the long-standing tradition of judicial notice and administrative notice. The Board also was permitted to draw the inference that the new coalition government would not persecute those who had fled the Sandinista regime. This is a *permissible* inference that any fact-finder may draw. It is not a *compellable* inference, however, and could disappear in the presence of competent rebuttal evidence showing that Sandinistas are still able to persecute in official acts.

---

5. The restriction in 8 C.F.R. § 3.2 has been interpreted to apply only to one who has departed under lawful procedures. *Wiedersperg v. INS,* 896 F.2d 1179, 1180–81 (9th Cir.1990) (restriction does not apply to alien outside United States who files petition to reopen deportation proceedings that were based on conviction later vacated) (citing *Mendez v. INS,* 563 F.2d 956, 958–59 (9th Cir.1977) (rejecting INS's "contention that its decisions are immune from judicial review when the alien is physically out of the country—without regard to the manner in which this 'departure' was accomplished....")); *see also United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2154–55, 95 L.Ed.2d 772 (1987) (alien deported on basis of constitutionally defective proceedings must be permitted to challenge deportation in subsequent prosecution for illegally reentering United States). It would seem that if one were deported under constitutionally infirm procedures in violation of one's due process rights, one would nevertheless have the right to federal habeas relief. Under such circumstances, the applicant should be permitted to return from Nicaragua to the federal court under a State Department certificate of identity to vindicate constitutional rights. 8 U.S.C. § 1503(b).

I would hold that the Due Process Clause confers upon the petitioners the right to rebut this permissible inference and that the Board's denial of that opportunity violates Due Process; only when the Board denies a meaningful opportunity to present competent rebuttal evidence does a Due Process violation occur. That denial has not taken place as yet in this case. Unless and until it does, the allegation of a constitutional deprivation is completely premature.

### D.

This was the apparent motivation of our sister circuits in rejecting challenges after the Board took administrative notice of government changes in Poland and Nicaragua.

As to Nicaragua, *see Rhoa–Zamora v. INS*, 971 F.2d 26, 34 (7th Cir.1992) (Board took administrative · notice of change of government without giving advance notification to petitioner; availability of proceedings to reopen or. reconsider adequately protected petitioner's Due Process rights), · *cert. denied*, —— U.S. ——, 113 S.Ct. 2331, · —— L.Ed.2d —— (1993); *Chavez–Robles v. INS*, 966 F.2d 1441 (4th Cir.1992) (unpublished disposition; text in WESTLAW) (noticed facts provided sufficient grounds for denying petition for. review, but without prejudice to petitioner's right to file motion to reopen under 8 C.F.R. § 3.8); *Rivera–Cruz v. INS*, 948 F.2d 962, 967, 968–69 (5th Cir.1991) (Board properly took notice of change of government; availability of motion to reopen and subsequent judicial review of denial of motion ensured that Board would not deprive petitioner of fair hearing); *Gutierrez–Rogue v. INS*, 954

F.2d 769, 773 (D.C.Cir.1992) (petitioner appears to be correct in arguing that Due Process guarantees right to contest noticed facts, but Due Process claim is premature, because petitioner did not file motion to reopen).[6]

### IV.

For reasons known only to the Immigration and Naturalization Service, no petition for panel rehearing and no suggestion for rehearing en banc were filed in that case, even though its decision—that the Due Process Clause prevents the Board of Immigration Appeals from taking administrative notice of the Nicaragua government change without advance notification to the petitioners—conflicts with every other court of appeals that has discussed the issue.

But the status of constitutional law should not be at the whim of lawyers for a single administrative agency. The legal precept underlying *Castillo–Villagra* is not limited to INS administrative law. The decision has powerful precedential authority. It was not an airline super-saver excursion ticket good for this day and flight only.

Because the panel bottomed its decision on constitutional law, it has a serious potential as a precedent—at least in this judicial circuit—to disturb the long-standing, recognized practice of federal agencies to take administrative notice of facts, and to draw inferences from those facts, a practice authorized by Congress and a host of federal regulations.

I feel it necessary to repeat that although INS lawyers decided not to ask for en banc reconsideration or to file a petition for certiorari, this does not mean that *Castillo–Villagra* is an interpretation of immi-

---

6. As to Poland, *see Tokarska v. INS*, 978 F.2d 1, 1–2 (1st Cir.1992) (per curiam) (Board took notice that Solidarity is now part of coalition government in Poland, so petitioner could not fear persecution for membership in Solidarity); *see also Kaczmarczyk v. INS*, 933 F.2d 588, 596–97 (7th Cir.1991) (due process requires that petitioners be permitted opportunity to rebut officially noticed· facts, but existing procedures under 8 C.F.R. § 3.2 adequately protect this right; *Kapcia v. INS*, 944 F.2d 702, 705–06 (10th Cir. 1991) (no due process deprivation when immigration judge took notice of change of govern-

ment at hearing, and petitioners knew of this issue when they appealed to Board); *Wojcik v. INS*, 951 F.2d 172 (8th Cir.1991) (per curiam) (Board properly took administrative notice of change of government; citing *Kaczmarczyk*); *Janusiak v. INS*, 947 F.2d 46, 48 n. 1 (3d Cir. 1991) (Board properly took administrative notice of change of government); *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir.1990) (same). *See also Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir.1992) (per curiam) (Board properly took administrative notice of change of government in Hungary; citing *Kaczmarczyk*).

gration law only; it is a flat, if not imperial, statement of constitutional law.

First, it has a potential effect on all agencies regulated by the Administrative Procedure Act (APA) at least in this judicial circuit.[7] The taking of official notice is authorized by the APA, but the Act provides:

> When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

5 U.S.C. § 556(e).

This statutory provision not only makes sense and comports with fairness, but it meets the orthodox precepts of Due Process: It provides those who are affected an opportunity, "on timely request," to present competent evidence rebutting the noticed facts. Applying the *Castillo–Villagra* test requiring advance notification, obviously this portion of the APA will not pass constitutional muster. This is strong medicine. And the ramifications could be widespread.

Administrative notice may be taken by many federal agencies under specific statutory and regulatory authority. 5 C.F.R. § 1201.64 (Merit Systems Protection Board); 5 C.F.R. § 2423.19 (Federal Labor Relations Authority); 9 C.F.R. § 202.120 (proceedings under Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.*); 10 C.F.R. § 13.18 (civil fraud proceedings before Nuclear Regulatory Commission); 12 C.F.R. § 19.36 (Treasury regulations governing national banks); 13 C.F.R. § 142.18 (civil fraud proceedings before Small Business Administration). Conceivably, these regulations are now out the constitutional window—at least in this, the largest of the federal judicial circuits—because the statutes, regulations and agency practice do not provide for advance notification that the agency will be taking administrative notice of certain facts.

Moreover, other agencies may be affected. *See, e.g., ACEMLA v. Copyright Royalty Tribunal*, 763 F.2d 101, 109 (2d Cir. 1985) (dicta) (copyright agency might be able to take administrative notice that certain copyrighted musical works were being performed based on works' dominant position in industry); *NLRB v. Milk Drivers & Dairy Employees Local 338*, 531 F.2d 1162, 1165–66 (2d Cir.1976) (Board is permitted to take official notice of "its expert knowledge of labor relations and ... its 'appraisal of normal conditions about industrial establishments,' [citation omitted], as well as ... common experience and common sense," but Administrative Procedure Act does not permit official notice "to short-circuit the requirements of a fair hearing. It may, for example, be unfair under certain circumstances for the Board to draw an inference based in part upon its general knowledge of the labor field without giving the party a chance to introduce specific facts tending to rebut or explain away the inference."); *McLamore v. Weinberger*, 538 F.2d 572, 574–75 (4th Cir.1976) (Secretary is permitted to use South Carolina *Job Guide* to take administrative notice of existence of jobs that Social Security claimant could perform).

Nor may it be effectively argued that INS cases are sui generis and lack the capacity to propagate precedents for other administrative agencies. Precepts of logic[8] and case law demonstrate that INS cases can be and are utilized to support decisions in administrative law matters involving the APA. Thus, in *Union Electric Co. v. Federal Energy Regulatory Commission*, 890 F.2d 1193 (D.C.Cir.1989), the

---

**7.** To be sure, the *Castillo–Villagra* panel would permit administrative notice of certain facts without advance notification: "It is not necessary to warn that administrative notice will be taken of the fact that water runs downhill." 972 F.2d at 1028.

**8.** Logicians teach us that the acceptability of an analogy will vary proportionately with the number of circumstances that have been analyzed, will depend upon the number of positive resemblances (similarities) and negative resemblances (dissimilarities) and will be influenced by the relevance of the purported analogies. An argument based on a single relevant analogy connected with a single instance will be more cogent than one which points out a dozen irrelevant considerations. *See, e.g.,* Irving M. Copi, *Introduction to Logic* 411, 414 (7th ed. 1982).

court cites INS precedent to support the proposition that administrative notice is broader than judicial notice. *Id.* at 1202. In addition, the court held that if an administrative agency provides the opportunity for a rehearing after it has administratively noticed facts and the agency "respond[s] to it reasonably, the Commission satisfie[s] [5 U.S.C.] § 556(e) on this point." *Id.* at 1203. Moreover, because the mechanism for rehearing satisfied the statute, no Due Process violation ripened. *Id.* at 1202.

## V.

This, too, must be said. Although my difference with the *Castillo–Villagra* panel may appear to be narrow, and although we would guarantee the petitioners the opportunity of presenting rebuttal evidence to the Board, a wide jurisprudential chasm separates us. I believe that we should return to the *status quo ante* in two important areas of the law affected by its decision: administrative or judicial notice, and the ripening of Due Process claims.

- The precedent of requiring the Board of Immigration Appeals to give advance notification that it will take administrative notice of a fact may, as I have demonstrated, by proper extension be applicable to all agencies. This, in itself, is heady, far-reaching stuff. Even more potent can be its effect on the power of courts to take judicial notice of matters without giving advance notification. The precedential ramifications of the *Castillo–Villagra* decision are neither casual nor nonchalant.

- Similarly, the panel's added gloss to orthodox Due Process jurisprudence, discovering a Due Process violation without the denial of an opportunity to be heard, is a precedent of unpredictable limitations. I offer this not as an *ad terrorem* argument but rather to point out that the holding may be an unruly horse that can gallop further than this court may wish it to go, faced as the court is with the largest appel-late constitutional law caseload in the country.

Thus, I reach the same result as each of our sister circuits. With them I agree that the motion to present rebuttal evidence implicates a right assured by the Due Process Clause and must be considered in good faith by the Board. *Kaczmarczyk*, 933 F.2d at 597 n. 34, *quoted in Rhoa–Zamora*, 971 F.2d at 36. With them, I would "admonish the Board to consider petitioner's motion in that light." *Id.*

But I go one step further. I remind the Board that the district courthouse doors would swing wide open for habeas relief if suddenly—by whim, accident, chance or predetermination—someone in the immigration service would take upon himself or herself to implement deportation proceedings at the very same time the petitioners are attempting to vindicate a Due Process right before the Board.

Accordingly, I concur in the judgment in this case, but I do so only because this panel is bound by the prior panel decision.

FLETCHER, Circuit Judge, concurring:

I concur in the panel's per curiam opinion. I write separately to make clear that, in my view, the opinion on which we rely in the per curiam is neither constitutionally dubious nor jurisprudentially unprincipled as Judge Aldisert's concurrence suggests. In *Castillo–Villagra v. INS*, 972 F.2d 1017 (9th Cir.1992), speaking for our court, a unanimous panel provided sound analysis and appropriate direction to the INS that our circuit has followed in a large number of subsequent cases, published and unpublished. Relying on Supreme Court precedent and principles of due process, *Castillo–Villagra* analyzed the BIA's use of administrative notice-taking in the context of asylum and withholding of deportation requests advanced by three Nicaraguan nationals. Far from issuing "imperial" statements of constitutional law, it set forth a flexible means of analyzing different categories of notice-taking. Wrongly charged with "inventing" a new meaning for due process, it clearly articulated the due process deprivation suffered by petitioners when notice-taking became a device for "assuming away" their case.

## A. The Due Process Deprivation

The *Castillo–Villagra* court set forth the four "facts" that the BIA had administratively noticed. It categorized three as legislative in nature, and the fourth as adjudicative.[1] Specifically pointing to the "multidimensional nature of administrative notice decisions," the court recognized that the agency has discretion "not only for whether to take notice, but also for whether to allow rebuttal evidence and even for whether the parties must be notified that notice will be taken." 972 F.2d at 1028. It is incorrect to reduce, as Judge Aldisert does, its holding to the simplistic proposition that all administrative notice-taking requires advance notice to the parties as a matter of constitutional law. Concurrence at 1114, 1120–1121.

Significantly the court found taking administrative notice of the fourth, adjudicative fact—that petitioners no longer had a well-founded fear of persecution in Nicaragua—the most problematic. The BIA took administrative notice of the *significance* of the changes in Nicaragua as they affected petitioners. On the basis of three legislative facts, and without individualized examination of the underlying merits, the Board summarily negated all of the Nicaraguan petitioners' claims of a continuing well-founded fear of persecution. Rather than deciding each case on the merits, it took notice that petitioners had no case. As the *Castillo–Villagra* court put it, in the guise of administrative notice-taking, the agency simply "assumed away petitioners' case." 972 F.2d at 1029. This is the core due process violation presented by these cases. Through no procedural, or jurisdictional default, petitioners were deprived of their right to the Board's review of the merits of their individual cases. They were deprived of the opportunity to plead the merits of their cases to the BIA as a matter of right on direct appeal.[2]

Judge Aldisert accuses the *Castillo–Villagra* court of finding a due process deprivation prematurely—of discarding principles of ripeness in order to engage in "classic result-oriented jurisprudence." Concurrence at 1118. This charge results from a flawed reading of the case and is grossly unfair. The court did *not* address itself to a *future* deprivation conditional upon discretionary denial of reopening. It made clear that the core deprivation occurred at the moment the BIA bypassed reviewing the circumstances of petitioners' individual cases, taking administrative notice of the change of government without squarely considering whether the individuals' claims might still have merit notwithstanding these changes.

Following the lead of *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 915, 99 L.Ed.2d 90 (1988), and *INS v. Doherty,* — U.S. ——, ——, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992), the *Castillo–Villagra* court analogized to criminal law to demonstrate the nature of the due process violation and the consequent inadequacy of discretionary relief. Elaborating on this analogy for the purposes of illustration, I suggest that in a criminal appeal the Board's action would have amounted to dismissing the defendant's appeal of his conviction based solely on evidence newly presented by the government in its appeal brief. No one disputes that the Board resolved the appeal without considering on the merits the evidence petitioners adduced to contest the IJ's determination. Criticism on ripeness grounds misses the mark. A criminal defendant receiving no direct review on the merits of her case would not be required to seek habeas relief (with the higher burdens and narrowed scope of habeas review) before making out a due process claim. We do not require a defendant to run the gamut of federal court discretionary reviews before acknowledging that she was deprived

---

1. The administratively-noticed facts, both legislative and adjudicative, "included: (1) that Violeta Chamorro had been elected president, (2) that her non-Sandinista coalition had gained a majority in parliament, ... (3) that the Sandinistas were ousted from power ... [and (4)] that the Castillo–Villagra family had nothing

more to fear from the Sandinistas." *Castillo–Villagra,* 972 F.2d at 1027.

2. The merits of these cases were allegedly of continuing force despite certain changes in the government in their home country.

of her right to a hearing on direct review. As the *Abudu* court put it, "[t]here is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries *a fair opportunity to develop and present their respective cases.*" 485 U.S. at 94, 108 S.Ct. at 904 (emphasis added). The BIA's "adjudicative" notice-taking closed numerous Nicaraguan cases, but at the cost of ignoring one side—a tradeoff flatly inconsistent with due process.

Judge Aldisert suggests that a motion for reopening under the regulations would cure, even obviate, this deficiency. In addition to misapprehending the nature of the due process deprivation at issue, he ignores the requirements and limitations of the reopening procedure.[3] A Section 3.2 hearing cannot substitute for direct consideration on appeal. It was not designed to do so. First, the regulations explicitly state that motions to reopen "shall not be granted unless it appears that evidence sought to be offered is material *and was not available and could not have been discovered or presented* at the former hearing." 8 C.F.R. § 3.2 (emphasis added). These motions must "state the *new facts* to be proved." 8 C.F.R. § 3.8 (emphasis added). The Supreme Court has made it abundantly clear that the threshold requirements for reopening may be strictly interpreted. Only new evidence, previously unavailable, or unforeseeable, and thus incapable of presentation to the IJ or the BIA on direct review justifies a reopening. *Doherty,* —— U.S. at ——, 112 S.Ct. at 726; *Abudu,* 485 U.S. at 108, 108 S.Ct. at 913. Even then, higher standards are imposed. The Ninth Circuit employs a two-part test (endorsed by the Supreme Court) which requires that petitioners also "make a prima facie showing [of eligibility] for the relief sought." *Rodriguez v. INS,* 841 F.2d 865, 867 (9th Cir.1987) (citation omitted); *Samimi v. INS,* 714 F.2d 992, 994 (9th Cir.1983); *see also Abudu,* 485 U.S. at 108 n. 13, 108 S.Ct. at 913 n. 13. Lastly, as a functional mat-

ter, a reopening proceeding cannot take the place of direct review. "[M]otions to reopen are decided without a hearing and serve only a limited screening function." *Hernandez–Ortiz v. INS,* 777 F.2d 509, 514 (9th Cir.1985) (citing *Reyes v. INS,* 673 F.2d 1087, 1089, 1091 (9th Cir.1982)). Where a claim requires a factual showing, one which may depend on live testimony or oral argument, our courts have found "the abbreviated procedure in a motion to reopen before the BIA is simply not a substitute." *Moran–Enriquez v. INS,* 884 F.2d 420, 423 n. 2 (9th Cir.1989).

All three of these factors render a discretionary reopening proceeding the wrong vehicle for belated direct review of petitioners asylum claims. But the first factor— the plain language of the regulations and its strict interpretation by the courts— make reliance on reopenings unquestionably inappropriate. The Nicaraguan petitioners do not wish to offer new evidence unavailable at the time the BIA reviewed their claims. In the first place it is not their evidence that is new. Contrary to the position adopted by the BIA, these petitioners contend that the Sandinistas *remain* "in power" at both institutional (police and army) and extragovernmental (local leadership) levels. Formal decrees assure the continuity of military power in Sandinista hands. *See* Concurrence at 1115 n. 1. These contentions are raised to rebut the newly noticed facts, but they argue continuity not change. By their nature, they do not constitute "new facts" or "new evidence," but rather evidence of an unchanged backdrop supporting an ongoing fear of persecution. By failing to review the merits of the *Castillo–Villagra* petitioners' claims, the BIA committed much the same error condemned in *Kovac v. INS,* 407 F.2d 102 (9th Cir.1969). There a Yugoslavian crewman received a hearing insufficiently related to the "substance of [his] claim." *Id.* at 103–104. The BIA "rested [its] conclusion entirely upon" a decision made with respect to a fellow countryman

---

**3.** It is because Judge Aldisert ignores these requirements that he believes petitioners have not been deprived of due process. Our quarrel is not a constitutional one over the interpretation

of the due process clause. Concurrence at 1115. Rather we differ in our reading of the INS regulations and the effect to be given Supreme Court precedent interpreting them.

which "even if accurate as to him, [was] wholly inapplicable to petitioner." *Id.* at 105. Because this crewman never received a proper "first hearing" (on the substance of his case) and, because the evidence relied upon lacked individual application (it applied to another Yugoslav, not necessarily to Kovac), the court insisted on remand to the first level of agency review. *Id.* at 105–108 ("[u]nder the statute petitioner was entitled to a determination based upon the probability of persecution of himself, not of others.... It is particularly important that an applicant for [asylum] have a reasonable opportunity to present his proofs, for the stakes are high. We have grave doubt that the hearing as conducted met this standard") (internal citation omitted). Both sets of petitioners were afforded remand because their evidence was not "new;" it simply had gone unreviewed (through no fault of petitioners) by the agency charged with hearing it.[4]

Nor is the rebuttal evidence which petitioners might adduce properly characterized as "unavailable" and "incapable" of being presented before the BIA on direct review. Petitioners are required to show that their individualized circumstances warrant granting asylum. Any case they have depends upon the interaction of their personal circumstances with the political landscape in Nicaragua. Rebuttal evidence need not include new facts—in most cases petitioners are likely to insist that the dangers particular to them remain despite apparent political change. Ironically their "new" evidence, then, is that there is no "new evidence," only evidence that change has not materialized or not in any way material to petitioners. It is not "new evidence" in the sense recognized by the caselaw; for instance, where a petitioner wishes to add to the record accounts of persecution which have taken place subsequent to her hearing or which touch petitioner's life more closely. *See, e.g., Hernandez–Ortiz,* 777 F.2d at 514–515 & 514 n. 4 (family members killed and threatened

after mistaken deportation); *Samimi,* 714 F.2d at 994–995 (no prior knowledge of treatment of family members).

Ultimately Section 3.2 proceedings do not suffice because they serve a different purpose and are intended to provide relief for a different problem. *Castillo–Villagra* built on the analogy between a motion for reopening and a motion for a new trial to point out that where there is no trial or no hearing, there can be no Section 3.2 solution. Not only did the BIA not consider the merits of the case petitioners like Gomez–Vigil and his wife presented to the IJ, it made its decision "on the basis of facts which were not the subject of the hearing before the IJ." *Castillo–Villagra,* 972 F.2d at 1025. "That means that, with respect to the facts that controlled the BIA decision, the petitioners have never had a hearing." *Id.* The *Castillo–Villagra* court correctly read *Abudu* (and *Doherty*) to "teach[ ] that the 'heavy burden' upon which the moving party seeking a second trial should not be imposed where there has not been a first trial." *Id.* Like the Castillo–Villagra family the Gomez–Vigils were deprived of their right to an initial hearing before the BIA on the merits of their case. Discretionary motions to reopen are not designed to deal with this type of deprivation. The court correctly understood that it makes no sense to force petitioners into the posture of seeking reopening based on new evidence when they have had no threshold hearing on the critical adjudicative facts.

### B. Spillover Effects

Judge Aldisert also impugns *Castillo–Villagra* for the havoc it will wreak on administrative and judicial notice-taking beyond the INS context. These charges, I suggest, are based on an oversimplification of the court's holding, *supra* at 1123. They are simply wrong. In the first place administrative notice-taking that may be appropriate when undertaken in the INS

---

4. The *Castillo–Villagra* court did not remand to the first level of agency review (as the *Kovac* court did, 407 F.2d at 108). In remanding to the BIA, it left it to the BIA's discretion as to whether to remand to the IJ to further develop the record or to allow supplemental briefing and oral argument.

**1126**

context, may or may not be appropriate in other contexts. The BIA procedures invade neither the territory of Rule 201[5] (judicial notice) (Fed.R.Evid. 201(a) & (e)) nor the analogous provision for APA-governed cases (administrative notice) (5 U.S.C. § 556(e)). Courts can and do differentiate between INA-based and APA-based cases. *Castillo–Villagra,* 972 F.2d at 1025–26. Further, the *Castillo–Villagra* court was centrally concerned with the BIA's noticing of highly debatable legislative facts or dispositive adjudicative facts where no statutory or regulatory provision ensured that due process would be accorded.[6] Its measured approach to the requirements for different forms of notice-taking emerges from and makes sense within the immigration context. *Castillo–Villagra,* itself, does not suggest broader application. It is not reasonable to fear that the opinion will become an uncontrollable engine for due process objections to all Rule 201(e) notice-taking, or notice-taking specifically extended (and controlled) by other framework statutes.[7]

Our court has issued a sensible opinion in *Castillo–Villagra.* Judge Aldisert's quixotic attack is unjustified.

**5.** Judge Aldisert criticizes *Castillo–Villagra* for failing to resolve the conflict between its holding and Rule 201. I suggest the panel saw no conflict. Nor do I. To the contrary, the panel drew its conceptual analysis from the rule and its accompanying notes.

**6.** The absence of such a provision in this context contrasts with the host of federal regulations cited by Judge Aldisert which regulate notice-taking in other contexts. Concurrence at 1120.

**7.** It is absurd to predict the wholesale abandonment by the Ninth Circuit of regulations and rules that structure notice-taking in discrete contexts. *See supra* note 6. Judge Aldisert's illustration of the powerful precedential effect of *Castillo–Villagra,* Concurrence at 1122, proves his fears exaggerated. The case he cites does rely on a Third Circuit INS opinion, but for a proposition which is so uncontroversial that Judge Aldisert identifies it upfront as something with which he is in "total agreement." Concurrence at 1115. Moreover, its analysis is expressly not grounded on any constitutional consideration. *Union Elec. Co. v. FERC,* 890 F.2d 1193, 1202 (D.C.Cir.1989).