UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSE REYNALDO CARRANZA-MARTINEZ,
Petitioner,

v.

No. 97-1260

U.S. IMMIGRATION &
NATURALIZATION SERVICE,
Respondent.

On Petition for Review of an Order of the
Board of Immigration Appeals.
(A70-122-386)

Argued: January 28, 1998

Decided: February 24, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ,
Circuit Judges.

_____

Petition for review denied by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Germaine Wright Sobral, GUTJAHR & MONTAGUT,
Falls Church, Virginia, for Petitioner. Ellen Sue Shapiro, Senior Liti-
gation Counsel, Office of Immigration Litigation, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assistant
Attorney General, Carl H. McIntyre, Jr., Senior Litigation Counsel,
Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jose Reynaldo Carranza-Martinez, an illegal alien, petitions for review of a final deportation order issued by the Board of Immigration Appeals. Finding substantial evidence to support the Board's decision, we deny his petition.

I.

Carranza, a 32-year-old native and citizen of El Salvador, entered the United States illegally near Douglas, Arizona on or about September 9, 1991. Two days later, on September 11, 1991, the Immigration and Naturalization Service (INS) issued an order to show cause as to why he should not be deported for violating § 241(a)(1)(B) of the Immigration and Nationality Act. See 8 U.S.C.A. § 1251(a)(1)(B) (West Supp. 1997). Carranza admitted the violation and conceded deportability, but requested asylum, withholding of deportation, or voluntary departure in place of deportation.

At a hearing on the merits before an Immigration Judge (IJ) on August 12, 1992, Carranza testified to the following events. In 1985, he joined the El Salvadoran army, becoming a soldier in an elite anti-terrorist group known as the ARCE battalion. The battalion often engaged in warfare with El Salvador's Marxist guerrilla organization known as the Farabundo Marti National Liberation Front, or FMLN. Carranza served in this capacity as an active soldier from 1985 until 1988, and then as an army reservist from 1988 until 1990. During the course of his time with the army, the FMLN questioned Carranza's mother and murdered his father.

Carranza left the army in 1990. Shortly thereafter, the FMLN abducted him. During the forty day abduction, the FMLN blindfolded Carranza, strung him by his feet, threatened to kill him with guns,

2

knives, and grenades, and questioned him as to "information regarding the high commands of the armed forces." The FMLN also forced Carranza to dig what it said would be his own grave, and told him "we're going to kill you if you don't cooperate, if you don't give us information." Eventually, Carranza gave the FMLN information regarding the location of his unit and its commanders. Carranza ultimately gained a degree of his captors' trust, and escaped when they left him unsupervised. The FMLN also abducted Carranza's brother for six days, but released him, stating "the one that we really need to kill is your brother."

Following his escape, Carranza moved around El Salvador, but limited his movement to places with an army presence because he felt safer in those areas. Thereafter he left the country and entered the United States. Carranza fears returning to El Salvador because "there is no peace in our country."

The IJ denied Carranza's pleas for asylum and withholding of deportation, and granted his request for voluntary departure. The IJ determined that Carranza failed to demonstrate past persecution or a well-founded fear of persecution on account of his race, religion, nationality, political opinion, or membership in a particular social group. Carranza, therefore, did not fit the definition of "refugee" entitled to asylum as defined by § 101(a)(42) of the Act. See 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1997); see also Matter of Chen, 20 I & N Dec. 16 (BIA 1989) (eligibility for asylum can be based on demonstration of past persecution or a well-founded fear of future persecution). The IJ further noted that "[i]nasmuch as the guerrilla organization has entered into a cease fire and has signed accords agreeing to demobilize . . ., we find that this is not a case in which there is any presumption that any harm which was suffered in the past, even if it were deemed to be persecution, is likely to continue into the future." Thus, the IJ found that Carranza did not have a well-founded fear of future persecution.

On January 31, 1997, the Board affirmed the decision of the IJ and dismissed Carranza's appeal. The Board found that Carranza had failed to demonstrate past persecution or a well-founded fear of future persecution on account of a protected category. Further, the Board took administrative notice of the State Department's 1995 Country

3

Reports on Human Rights Practices, which confirmed the end of El Salvador's civil war and the democratic election of new leadership. The Board reasoned that "[p]articularly in light of these political changes in El Salvador, [Carranza] has not proven that anyone connected with the guerrillas or any other entity in that country currently maintains any interest in harming him so as to demonstrate a well-founded fear of persecution." Carranza then petitioned this court for review.

II.

Carranza offers two arguments on appeal. First, he asserts that he is a refugee as defined in the Immigration and Nationality Act because he has demonstrated past persecution on the basis of his political opinion, and thus has demonstrated his eligibility for asylum. Alternately, he contends that he is a refugee because he possesses a well-founded fear of future persecution based on his political opinion. We find neither of Carranza's arguments meritorious, and deny his petition for review.

We begin with the principle that illegal aliens do not possess an entitlement to asylum in the United States. The Immigration and Nationality Act authorizes the Attorney General, solely in her discretion, to grant asylum to aliens that meet the definition of refugee. See 8 U.S.C.A. § 1158(a), (b)(1) (West Supp. 1997); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Gebremichael v. INS, 10 F.3d 28, 35 (1st Cir. 1993); Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992); Gutierrez-Rogue v. INS, 954 F.2d 769, 771-72 (D.C. Cir. 1992); M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The Act defines a refugee as any person unable or unwilling to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1997). The alien bears the burden to prove eligibility for asylum. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir. 1992). Thus, an alien may qualify for refugee eligibility for asylum if he or she demonstrates either (1) past persecution based on any one of the protected factors, or

4

(2) a well-founded fear of future persecution based on one of the factors. See Gebremichael, 10 F.3d at 35; Huaman-Cornelio, 979 F.2d at 999; Matter of Chen, 20 I & N Dec. 16 (BIA 1989).

We review the Board's determination that an alien is not eligible for asylum for substantial evidence. We must uphold the Board's determination unless the evidence shows that a reasonable fact finder must conclude otherwise. See Elias-Zacarias, 502 U.S. at 481; Cruz-Diaz v. INS, 86 F.3d 330, 331-32 (4th Cir. 1996); Huaman-Cornelio, 979 F.2d at 999.

A.

Carranza asserts that "[t]he fact that [his] detention, interrogation and abuse was intended to obtain military intelligence information does not mean that the persecution was not at least partially motivated by political opinion," and that "the record reasonably shows that an additional underlying reason for the abuse was the persecutor's belief that as a former military member . . . detailed to combat guerrillas, [Carranza] must have held political views opposed to the guerrillas." Brief of Petitioner at 13. Thus, Carranza submits, the past persecution he endured resulted from the political opinion imputed to him by the FMLN. That the FMLN imputed this political opinion to him can be deduced, Carranza maintains, from the fact that the guerrillas also captured his brother and killed his father, acts which could have nothing to do with obtaining information about the army.

Although Carranza states that he has "testified .. . concerning his political opinion," id. at 18, the record reveals that he has done nothing of the sort. Rather, Carranza testified that he joined the army not as an expression of political opinion, but "out of fear of the guerrilla[s] because I realize[d] that they were killing a lot of people." Further, Carranza's testimony repeatedly demonstrates that, to the extent that the FMLN persecuted him, it did not do so "on account of" any political opinion imputed to Carranza due to his military service. Rather, the FMLN persecuted him simply because he served in the army.

In fact, Carranza's attorney asked Carranza at his hearing: "Why do you think that members of the FMLN were going to kill you?"

5

Carranza answered: "[B]ecause I was their enemy . . . . I was a member of the armed forces." Moreover, assuming arguendo, that FMLN's abduction of Carranza's brother and murder of his father can not be explained as an effort to obtain military information, Carranza has failed even to suggest evidence that an imputed political opinion motivated the action. Rather, he testified that FMLN killed his father "[j]ust out of hate because you are a member of the armed forces. That was their only reason."

Thus, Carranza's own statements compel us to conclude that FMLN did not persecute him on the basis of his political opinion. Service in the military is not of necessity a political statement. See Elias-Zacarias, 502 U.S. at 482-83; Cruz-Diaz, 86 F.3d at 332; Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir. 1991); Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1298-99 (11th Cir. 1990). The Ninth Circuit has stated in a similar case that "governmental efforts to quell . . . violence through the use of force do not subject the entire military establishment to status-based persecution." Arriaga-Barrientos, 937 F.2d at 414; see also M.A., 899 F.2d at 315 (males of military draft age do not constitute a particular social group for refugee purposes). Nor do such efforts automatically afford former army members refugee status on the basis of imputed political opinion. "Military enlistment in Central America does not create automatic asylum eligibility within the United States." Arriaga-Barrientos, 937 F.2d at 414.

We do not hold that a former soldier can never demonstrate that a guerrilla organization persecuted him based on his political opinion. We merely hold that Carranza has failed to prove this.

B.

Carranza also argues, as a separate basis for his eligibility, that he has demonstrated a well-founded fear of future persecution. He claims that he and his family are subject to continuing threats and violence, and establishes that the FMLN guerrillas intend to pursue him. Carranza asks: "Is it unreasonable to conclude that the guerrillas involved would not harbor the continued intent to harm [Carranza] today?" Brief of Petitioner at 16-17. That, however, is not the question before the court. The question before us is whether substantial evidence sup-

6

ports the Board's determination that Carranza does not have a well-founded fear of future persecution based on one of the statute's enumerated categories.

A well-founded fear of future persecution includes both subjective and objective elements. See Huaman-Cornelio, 979 F.2d at 999; M.A., 899 F.2d at 311. An alien may satisfy the subjective prong with credible testimony that reveals a genuine fear of persecution. See Berroteran-Melendez, 955 F.2d at 1256. To satisfy the objective prong, an alien must offer specific, concrete facts demonstrating that a reasonable person in similar circumstances would fear persecution. See Cruz-Diaz, 86 F.3d at 331; Huaman-Cornelio, 979 F.2d at 999. Moreover, the Board may take administrative notice of changed circumstances and conditions in a country, and may make reasonable inferences therefrom regarding the foundation for fear of persecution. See Gebremichael, 10 F.3d at 37; Gutierrez-Rogue, 954 F.2d at 771-72; Rivera-Cruz v. INS, 948 F.2d 962, 966-67 (5th Cir. 1991); Kubon v. INS, 913 F.2d 386, 388 (7th Cir. 1990).

INS does not contend that Carranza fails the subjective prong of the well-founded fear test, and therefore we need not address that issue further. As for the objective prong, however, the only evidence before us -- an opinion letter issued by the Office of Asylum Affairs and the State Department's country report -- supports the Board's conclusion that, given the changed military and political conditions in El Salvador, Carranza "has not proven that anyone connected with the guerrillas or any other entity in that country currently maintains any interest in harming him so as to demonstrate a well-founded fear of persecution." Carranza has offered nothing to contradict the conclusion other than a naked assertion that "there is no peace in our country." Twelve years have passed since the murder of Carranza's father at the height of El Salvador's internal strife, and almost eight years have elapsed since Carranza's own abduction by the guerrillas. The evidence indicates that during this period civil unrest in El Salvador has largely subsided in response to U.N.-sponsored peace accords and democratic elections. Given this record, we find no reason to upset the Board's decision.

Carranza's "well-founded fear" claim fails for another reason: Carranza has not demonstrated that any persecution he fears, whether

7

well-founded or not, stems from his political opinion. Indeed, his testimony indicates that his fear stems from the mere fact of his military service and information the guerrillas have about that service. As discussed above, this concern does not amount to fear of persecution on account of political opinion.*

III.

For the reasons stated above, we hold substantial evidence supports the Board's determination. Accordingly, the petition for review is

DENIED.

_____

*The Board determined that "inasmuch as [Carranza] has failed to satisfy the lower burden of proof required for asylum, it follows that he has failed to satisfy the clear probability standard . .. required for withholding of deportation." Carranza neglected to properly list this issue in his brief as required by Fed. R. App. P. 28(a)(3). He does, however, briefly assert that he has demonstrated eligibility for withholding of deportation, see Brief of Petitioner at 19, so we will address the contention. Resolution of the issue is simple. As stated in Huaman-Cornelio, 979 F.2d at 1000, our conclusion that Carranza failed to meet the asylum standard "necessarily means that [he] did not meet his burden on the more difficult withholding of deportation claim."